[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 23, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14602

_____

D. C. Docket No. 05-02513-CV-4-CLS

LILLIAN INGRAM,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,
Michael J. Astrue,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(August 23, 2007)**

Before PRYOR, KRAVITCH and ALARCÓN,* Circuit Judges.

PRYOR, Circuit Judge:

---

*Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

The main issue in this appeal is whether a federal court must consider evidence first presented to the Social Security Appeals Council when it decides whether to "enter a judgment affirming, modifying, or reversing the [Commissioner's denial of benefits], with or without remanding the cause for a rehearing." See 42 U.S.C. § 405(g). Lillian Ingram appeals a judgment affirming the denial of her application for disability benefits, and she argues that the district court erroneously refused to consider evidence of mental disability that she first presented to the Appeals Council. Inartful dicta in a few of our recent decisions has confused this issue, because we mistakenly stated that evidence first presented to the Appeals Council could be considered by the court only if the applicant had good cause for not presenting it earlier to the administrative law judge. Based on the plain meaning of the text of section 405(g) and the lucid explication in our longstanding precedents about the scope of judicial review, we conclude that a federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits. Because the district court failed to consider Ingram's evidence of mental disability, we reverse in part and affirm in part its judgment, and we remand for further proceedings.

# I. BACKGROUND

Lillian Ingram has a varied background of education and work experience. She received a regular high school diploma, became a licensed cosmetologist, completed a course in cooking, and earned a commercial driver's license. She worked as a teacher's aide, a bus driver, a hospital housekeeper, and a cook. For the ten years before her filing for disability benefits, Ingram worked at Gadsden Regional Medical Center, where she injured her back on the job in February 2001, when she was 38 years old.

In June 2002, Ingram filed an application for disability insurance benefits. Her application was denied. She then requested and was granted a hearing before an administrative law judge, which took place in December 2003.

At the hearing before the administrative law judge, Ingram testified that she experienced shooting neck, shoulder, and arm pain; could not bend, squat, or stoop; and could not push or pull anything. Ingram testified that she could stand for 20 to 30 minutes, sit for 20 to 35 minutes, and walk one block. Ingram also testified that she suffered from headaches and muscle spasms and had trouble balancing. She was on several medications, the side effects of which included lightheadedness and difficulty concentrating. She also suffered from depression and was taking medication for it.

Ingram also submitted evidence of her medical history to the administrative law judge. In May 2001, Ingram's treating physician, Dr. James White, employed magnetic resonance imaging that revealed damage to one of Ingram's vertebral discs. In June 2001, Ingram had surgery to remove the disc and, by the following month, Dr. White reported that Ingram was healing well but that Ingram reported a series of unusual complaints. In August 2001, White opined that Ingram would be restricted to sedentary work on a permanent basis and required treatment for depression. In October 2001, White stated that medication had dramatically improved Ingram's overall mood, and he released her to perform sedentary work.

Three non-treating physicians also examined Ingram before her hearing. Dr. Henry Born examined Ingram at the request of the state disability determination agency and found Ingram to be of average intelligence with no thought disorder. Born concluded that Ingram's surgery had afforded her some relief but she still suffered from ongoing lower back pain and should not engage in physically demanding work. Dr. Kenneth Warren, a psychologist, reported that Ingram was limited by mild restrictions in daily activities and had difficulty maintaining concentration but that her depression appeared to be controlled by medication and was "not severe." At the request of Ingram's counsel, Ingram was evaluated by Dr. Carlos Ganuza, a rheumatologist. His report stated that Ingram had cervical

4

spondylosis with radiculopathy, lumbar spondylosis with sciatic nerve compression, status and post lumbar laminectomy with persistent lower back and leg pain, gastroesophageal reflux disease, diabetes, and insomnia.

A vocational expert testified at Ingram's hearing. The expert testified that Ingram's exertion, as a bus driver, was light to medium and the job required a semi-skilled level. The vocational expert testified that if the administrative law judge were to find Ingram's subjective testimony credible, she would be unable to return to any kind of work. The administrative law judge posed a hypothetical question to the vocational expert about whether a person of Ingram's vocational profile who is limited to unskilled, sedentary work with a sit or stand option, no pulling or pushing of foot or leg controls, and occasional squatting, bending, or stooping could work. The vocational expert replied that the individual could perform sedentary, non-complex clerical jobs, such as information clerk or telephone salesperson, and there were at least 4,800 such jobs in north-central Alabama.

On April 29, 2004, the administrative law judge denied Ingram's request for benefits. The administrative law judge found that Ingram suffered from the various maladies listed by Dr. Ganuza and described them as severe, but the administrative law judge found Ingram's testimony "less than credible." The

5

administrative law judge found that Ingram's description of her limitations was "only somewhat consistent" with the medical evidence. The administrative law judge relied on the assessment of Dr. White, who had treated Ingram for several years, that Ingram could frequently perform sedentary work and occasionally lift 20 pounds. The administrative law judge found that no doctor concluded that Ingram was completely unable to work. The administrative law judge credited Dr. Warren's statement that Ingram's depression was alleviated by medication and Ingram experienced only mild social and mental restrictions. Finally, the administrative law judge found that Ingram had never sought help from or been referred to a mental health professional for her depression. Based on this evidence and the testimony of the vocational expert, the administrative law judge found that Ingram could perform sedentary work with a sit or stand option, no pushing or pulling with foot controls, and occasional squatting and bending, and the administrative law judge found that many of these jobs were available in north-central Alabama.

Ingram requested review by the Appeals Council and submitted a psychological evaluation prepared on July 14, 2004, by Dr. David Wilson at the request of Ingram's new counsel. Wilson had diagnosed Ingram with major and recurrent depression accompanied by psychotic features and mild mental

6

retardation. Wilson also had administered a test to determine Ingram's intelligence quotient. Wilson concluded that Ingram had a verbal I.Q. of 72, a performance I.Q. of 68, and a full-scale I.Q. of 67, read at a fifth-grade level, and could not benefit from academic training. Wilson stated, "The combination of all of [Ingram's] problems makes it highly unlikely that she could maintain a job—she would have a problem with the problem solving and with the social aspects of any job." The Appeals Council stated that it considered Dr. Wilson's report and made the report part of the record on appeal, but denied Ingram's request for review because the new information did not provide a basis for changing the decision of the administrative law judge.

Ingram filed a complaint in the district court and alleged that the Commissioner's decision was not supported by substantial evidence and was contrary to law. Ingram also requested that her application be remanded to the Commissioner for consideration of Dr. Wilson's evaluation. Ingram contended this evidence was "new and material and likely to change the outcome" of the Commissioner's decision because it established she was eligible for benefits under listings 12.04 (depression) and 12.05(C) (mental retardation). Ingram maintained that the administrative law judge should have developed the record regarding

Ingram's psychological state and mild retardation when the administrative law judge learned that Ingram had taken a special education class.

The district court affirmed the decision of the Commissioner and denied Ingram's request to remand. The district court stated that it was required to remand for the consideration of evidence not initially presented to the administrative law judge only if there had been good cause for failing to submit it, and its nonexistence before the hearing did not constitute good cause. The court concluded that substantial evidence supported the decision of the administrative law judge. The court reasoned that the administrative law judge did not err when it failed to develop the record as to Ingram's psychological and mental capabilities, because she had completed high school, completed vocational training, and worked as a bus driver.

Ingram filed a timely motion for reconsideration in the district court. Ingram submitted an affidavit, in which she explained that she had failed to submit the psychological report to the administrative law judge because she was financially unable to afford it. Ingram argued that good cause need not be established when new evidence is timely submitted to the Appeals Council. Ingram also argued, in the alternative, that her financial inability and her prior counsel's failure to suggest

that she obtain a psychological evaluation constituted good cause. The district court denied the motion.

## II. STANDARDS OF REVIEW

A few different standards of review govern this appeal. First, "[w]e review the [Commissioner's] decision with deference to the factual findings and close scrutiny of the legal conclusions." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); accord Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Graham v. Bowen, 790 F.2d 1572, 1574-75 (11th Cir. 1986). The Commissioner's factual findings are conclusive if supported by "substantial evidence," 42 U.S.C. § 405(g), which is "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). "Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin, 894 F.2d at 1529. Second, we review de novo the Commissioner's conclusions of law. Id. "The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." Cornelius, 936 F.2d at 1145-46. Third, we also review de

novo the judgment of the district court. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III. DISCUSSION

To determine the scope of judicial review, we begin with a review of the statute and regulations that govern the process of the Commissioner for granting or denying benefits. An application for disability benefits, for example, follows an intricate path of administrative process before it can be reviewed by a federal court. The claimant first must present an application to a state agency for disability determinations. 42 U.S.C. § 421(a). The claimant next is entitled to an evidentiary hearing before an administrative law judge, whose decision the claimant may then appeal to the Appeals Council. See Heckler v. Day, 467 U.S. 104, 106-07, 104 S. Ct. 2249, 2251 (1984).

With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process. See 20 C.F.R. § 404.900(b). The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if "the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." Id. § 404.970(b). The claimant may seek review in a federal court of "any final decision of the Commissioner of Social Security," 42 U.S.C. § 405(g),

only after exhausting these administrative remedies.  See Sims v. Apfel, 530 U.S. 103, 107, 120 S. Ct. 2080, 2083 (2000) (claimant must appeal to Appeals Council to exhaust remedies).

Section 405(g) permits a district court to remand an application for benefits to the Commissioner, who was denominated "the Secretary" in the original statute, by two methods, which are commonly denominated "sentence four remands" and "sentence six remands," each of which remedies a separate problem.   The fourth sentence of section 405(g) provides the federal court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The sixth sentence of section 405(g) provides a federal court the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

When a case is remanded, "the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision."  20 C.F.R.

11

§ 404.983.  If the case is remanded by the Appeals Council to the administrative law judge, the process starts over again.  Id. § 404.984.  If the case is decided by the Appeals Council, then that decision is subject to judicial review.  Id.

Ingram argues that the judgment of the district court is flawed in four ways. First, Ingram argues that the Appeals Council erred when it denied review of her application.  Ingram seeks remand or modification of this decision under sentence four.  Second, Ingram argues that the district court should have remanded to the Commissioner under sentence six to consider her new evidence.  Third, Ingram argues that the administrative law judge failed to develop the record as to her mental capacity.  Fourth, Ingram argues that the administrative law judge posed an improper hypothetical question to the vocational expert.  We address each issue in turn.

### A.  The District Court Failed to Consider Whether the Appeals Council Erred When It Concluded that the Decision of the Administrative Law Judge Was Supported by the Administrative Record as a Whole.

Ingram presents two alternative arguments about the treatment of the new evidence she presented to the Appeals Council.  Ingram's first argument is flatly contrary to the record and easily dismissed.  Her alternative argument is more complicated but persuasive.

Ingram first argues that the Appeals Council failed to consider her new evidence of mental disability, see 20 C.F.R. § 404.900(b), but the record establishes otherwise. The Appeals Council accepted Ingram's new evidence but denied review because, even in the light of Dr. Wilson's report, the Appeals Council found no error in the opinion of the administrative law judge. Ingram's argument that the Appeals Council erroneously rejected her newly proffered evidence fails.

Ingram argues alternatively that, if the Appeals Council accepted her new evidence, then the Appeals Council erroneously concluded that the administrative law judge's decision was not contrary to the weight of the evidence and should have granted review of her case. The Commissioner responds that a court cannot review under sentence four the decision of the Appeals Council not to grant review on the basis of new evidence because that decision is not "any final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g). The Commissioner argues alternatively that the Appeals Council correctly determined that the decision of the administrative law judge was supported by substantial evidence on the record as a whole. We address these contentions in turn.

1. The District Court Erred When It Refused to Review the Final Decision of the Commissioner in the Light of Dr. Wilson's Psychological Evaluation.

13

The Commissioner argues that a court cannot review under sentence four the decision of the Appeals Council to deny review and that, for Ingram to be entitled to a remand to the Commissioner on the basis of her evidence of mental disability, she must establish that the evidence she presented to the Appeals Council satisfies the requirements for remand under sentence six of section 405(g). The Commissioner's reading of section 405(g) is wrong. The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council. When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.

Nearly forty years ago, our predecessor circuit considered evidence first presented to the Appeals Council to determine that an application for benefits required further consideration by the Commissioner. In Daniel v. Gardner, the administrative law judge had been misled by an incorrectly transcribed date in a doctor's letter, and the doctor filed new evidence with the correct date in the Appeals Council. 390 F.2d 32 (5th Cir. 1968). The Appeals Council considered the evidence but denied review. Id. at 33. We faulted the Appeals Council for not

14

correcting the administrative law judge because "[t]he Appeals Council . . . had the benefit of Dr. Lumpkin's subsequent report that appellant had been permanently and totally disabled since 1954[, and t]his and Dr. Kay's corroborating findings of appellant's disability in 1957 stood undisputed in the record before the Appeals Council." Id. Instead of ordering an award of benefits, we directed the district court to remand to the Commissioner to determine whether, in the light of the undisputed medical evidence, the claimant met the other qualifications to be eligible for disability benefits. See id. at 34.

Sixteen years later, we again considered evidence first presented to the Appeals Council to determine that a claimant was entitled to an award of benefits. In Bowen v. Heckler, the claimant filed evidence in the Appeals Council, which considered the evidence but denied review. 748 F.2d 629 (11th Cir. 1984). We held that "the Appeals Council did not adequately evaluate the additional evidence" and, citing earlier precedents, reasoned that "[w]e have previously been unable to hold that the Secretary's findings were supported by substantial evidence under circumstances such as these." Id. at 634. In contrast with Daniel, we did not remand to the Commissioner. After quoting sentence four of section 405(g) in full and discussing it at length, we concluded that a reversal of the final decision of the Commissioner was appropriate. We held that "the Appeals Council should have

15

awarded Bowen disability insurance benefits," and we remanded to the district court "for entry of an order . . . that such an award be made." Id. at 637.

The Commissioner cannot distinguish Daniel, Bowen, and our other precedents that are consistent with them. See, e.g., Smith v. Bowen, 792 F.2d 1547 (11th Cir. 1986) (emphasizing the error of the Appeals Council); DePaepe v. Richardson, 464 F.2d 92 (5th Cir. 1972) (reviewing evidence submitted to Appeals Council). The Commissioner instead argues that the law has since changed. In support of that argument, the Commissioner offers three theories. All fail.

The Commissioner first argues that later decisions of the Supreme Court are inconsistent with our earlier precedents. We disagree. The decisions cited by the Commissioner do not even impliedly address the issue in this appeal. See Sims v. Apfel, 530 U.S. 103, 107, 120 S. Ct. 2080, 2086 (2000) (a claimant need not raise a specific issue to the Appeals Council to argue that issue in federal court); Shalala v. Schaefer, 509 U.S. 292, 303, 113 S. Ct. 2625, 2632 (1993) (a sentence four remand is an appealable "final judgment" of the district court).

Second, the Commissioner argues that the adoption of a regulation in 1980, see 45 Fed. Reg. 52,096 (Aug. 5, 1980) (codified at 20 C.F.R. § 404.955), effectively overturned the precedents of this Circuit, but we again disagree. The Third, Sixth, and Seventh Circuits have relied on this regulation to conclude that the

16

decision of the administrative law judge is the only final decision of the Commissioner subject to judicial review, see Matthews v. Apfel, 239 F.3d 589, 593-94 (3d Cir. 2001); Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993); Eads v. Sec'y of the Dep't of Health & Human Servs., 983 F.2d 815, 818 (7th Cir. 1993), but the Second, Fourth, Fifth, Eighth, Ninth, and Tenth Circuits have concluded that the denial of a request for review by the Appeals Council is part of the "final decision" of the Commissioner notwithstanding this regulation, see Higginbotham v. Barnhart, 405 F.3d 332, 335-36 (5th Cir. 2005); Perez v. Chater, 77 F.3d 41, 44-46 (2d Cir. 1996); O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994); Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993); Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992); Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc). We agree with the latter six of our sister circuits, not the former three.

The regulation cited by the Commissioner, 20 C.F.R. § 404.955, addresses the effect of the decision of the administrative law judge on the parties, but it does not define a final decision of the Commissioner for purposes of judicial review. The regulation states the unremarkable fact that the decision of the administrative law judge is binding on the parties unless it is reconsidered by the Appeals Council or reversed by a federal court:

17

The decision of the administrative law judge is binding on all parties to the hearing unless—

(a) You or another party request a review of the decision by the Appeals Council within the stated time period, and the Appeals Council reviews your case;

(b) You or another party requests a review of the decision by the Appeals Council within the stated time period, the Appeals Council denies your request for review, and you seek judicial review of your case by filing an action in a Federal district court . . . .

20 C.F.R. § 404.955.  The regulation does not state either that the decision of the administrative law judge is the "final decision" of the Commissioner or that federal courts are limited to a review of the administrative record as it existed before the administrative law judge.  The regulation instead provides that the decision of the administrative law judge is not binding on the parties when the claimant seeks review "by filing an action in a Federal district court."  Id. § 404.955(b).

Other regulations support the view that the decision of the administrative law judge is not necessarily the final decision of Commissioner for the purpose of judicial review.  Before a "final decision" of the Commissioner is entered for the purpose of judicial review under section 405(g), a claimant must appeal to the Appeals Council, which then may deny or grant review.  See id. § 416.1400(a)(5) (when the claimant's appeal to the Appeals Council is denied, "we will have made our final decision"); id. § 404.900(a)(5) (same); see also Bowen v. City of N.Y., 476

18

U.S. 467, 482, 106 S. Ct. 2022, 2031 (1986) ("Only a claimant who proceeds through all three stages [of administrative review] receives a final decision from the Secretary."). If a decision by the Appeals Council is necessary to create a "final decision" of the Commissioner for the purposes of judicial review, then it follows that the decision of the Appeals Council is, at least, a part of that "final decision."

Third, the Commissioner argues that our review of the Commissioner's decision is circumscribed by two more recent opinions, Keeton v. Department of Health & Human Services, 21 F.3d 1064 (11th Cir. 1994), and Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). We admit that the Commissioner's reading of section 405(g) finds support in some of the language in Keeton and Falge, but neither Keeton nor Falge decided the issue that we now face: whether a federal court can review under sentence four a complaint that the Appeals Council erroneously denied review after considering new and material evidence. To explain the error of the Commissioner's argument, we review both what we said and did in Keeton and Falge, and we then evaluate those decisions in the light of our earlier precedents and the statutory text. Our evaluation establishes that much of the language from Keeton and Falge upon which the Commissioner relies is dicta, and some of that dicta is contrary to our earlier precedents.

We first consider both what we said and did in Keeton where, unlike here, the Appeals Council did not consider any new evidence. The claimant in Keeton challenged both the denial of his benefits and the decision of the Appeals Council to deny review of his claim without considering his new evidence. 21 F.3d at 1066. We reasoned that, because a claimant does not exhaust his administrative remedies until he seeks review in the Appeals Council, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review." Id. at 1067. We stated that the decision of the Appeals Council not to consider the evidence and deny review "is . . . subject to judicial review because it amounts to an error of law," id. at 1066, but we also stated that "[w]hen the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Secretary," id. We remanded to the district court to consider whether the Appeals Council erred in denying review. Id. at 1068.

Our statement in Keeton that "[w]hen the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Secretary" is misleading dicta. If we had actually held in Keeton that the decision of the administrative law judge is the only "final decision" of the Commissioner subject to judicial review

20

under section 405(g), then we would not have remanded to the district court to review the decision of the Appeals Council to deny review. To the extent our opinion says one thing but does another, what it does is the holding of the decision. "[J]udicial opinions do not make binding precedents; judicial decisions do." Dantzler v. IRS, 183 F.3d 1247, 1251 (11th Cir. 1999).

In contrast with Ingram's appeal, we were confronted in Keeton with a decision of the Appeals Council that rejected newly proffered evidence and denied review; our statements about other cases in which the Appeals Council accepts evidence and denies review are extraneous to that decision. Because "[t]he holdings of a prior decision can reach only as far as the facts and circumstances frame the precise issue presented in that case," Chavers v. Sec'y, Fla. Dep't of Corr., 468 F.3d 1273, 1275 (11th Cir. 2006), we understand Keeton to hold that a decision of the Appeals Council to deny review after refusing to consider new evidence is a part of the "final decision" of the Commissioner subject to judicial review under sentence four of section 405(g).

We next consider both what we said and did in Falge where, unlike here, the claimant did not challenge the decision of the Appeals Council to deny review after it considered new evidence. The claimant in Falge appealed a denial of benefits after the Appeals Council had admitted new evidence and denied review, but the

21

claimant argued only that the administrative law judge's denial of benefits was unsupported by substantial evidence. 150 F.3d at 1322. We stated that, "when the [Appeals Council] has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." Id. at 1323. We explained that "[i]n different kinds of cases . . . we will consider evidence submitted only to the A[ppeals ]C[ouncil]," id., such as in Keeton, id. at 1323-24. We concluded that, unlike in Keeton, the separate decision of the Appeals Council to deny review was not before us:

> In this case . . . Falge does not seem to appeal the AC's decision to deny review. Instead Falge appeals only the ALJ's decision to deny benefits and the district court's affirmance of that denial, claiming the decision is not supported by substantial evidence. So, we need not consider the new evidence . . . in the light of the AC's denial of review.

Id. at 1324.

Our discussion in Falge about the scope of judicial review of a decision of the Appeals Council to deny review is dicta. We repeated the dicta from Keeton that the decision of the administrative law judge is the "final decision" of the Commissioner when the Appeals Council denies review, but we distinguished Keeton on the ground that Falge did not challenge the decision of the Appeals Council to deny review. We understand Falge to hold that when a claimant challenges the administrative law judge's decision to deny benefits, but not the

22

decision of the Appeals Council to deny review of the administrative law judge, we need not consider evidence submitted to the Appeals Council. Because Ingram challenges both the decision of the administrative law judge to deny benefits and the decision of the Appeals Council to deny review, the holding of Falge is inapposite.

Our dicta in Keeton and Falge have led some courts to question the consistency of our interpretation of the phrase "any final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g). Citing our decision in Falge, the Fifth Circuit erroneously included this Circuit in the minority of sister circuits that "have held that the ALJ decision alone is the final decision of the Commissioner." Higginbotham, 405 F.3d at 335. District courts within this Circuit have adopted conflicting interpretations of our case law, but none has held that this Circuit does not review the Appeals Council in at least some circumstances. See Williams v. Comm'r of Soc. Sec., 407 F. Supp. 2d 1297, 1302 (M.D. Fla. 2005) (concluding that Keeton and Falge are consistent and that a claimant may always challenge the decision of the Appeals Council to deny review); Fry v. Massanari, 209 F. Supp. 2d 1246, 1251-52 (N.D. Ala. 2001) (same); Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1364 (N.D. Ga. 2000) (concluding that the decision of the Appeals Council is reviewable except when the Appeals Council considers the new evidence

23

and denies the petition for review, as in Falge); Maroney v. Apfel, 57 F. Supp. 2d 1250, 1263 (N.D. Ala. 1999) (concluding that Falge is contrary to Keeton and other prior precedents and the district court must review the decision of the administrative law judge in the light of evidence first presented to the Appeals Council). In its review of Ingram's case, the district court was understandably confounded by our dicta in Keeton and Falge and erroneously concluded that a decision of the Appeals Council to deny review is not a reviewable final decision subject to a sentence four modification, reversal, or remand. We hope that our discussion of the dicta in Keeton and Falge will clear up this confusion to the benefit of both district courts within this Circuit and our sister circuits.

   2.  We Remand to the District Court to Consider Whether the Final Decision of the Commissioner Is Supported by Substantial Evidence on the Record as a Whole.

Ingram argues that the psychological evaluation prepared by Dr. Wilson renders the decision of the administrative law judge to deny benefits unsupported by substantial evidence and the Appeals Council erred by denying review. Ingram argues that the evaluation, combined with the other evidence of record, establishes that she is eligible for benefits under listings 12.04 and 12.05(C). Listing 12.04 provides that a claimant is disabled if she has a sufficiently severe "disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.04. Listing 12.05(C) provides that a claimant is

24

disabled if she has an I.Q. between 60 and 70 and another unrelated significant work-related limitation.  Id. listing 12.05(C).

Because the district court concluded that it could consider the psychological report of Dr. Wilson only if Ingram established good cause for failing to present that evidence to the administrative law judge, the district court did not determine whether the Appeals Council correctly decided that the "administrative law judge's action, findings, or conclusion is [not] contrary to the weight of the evidence currently of record."  20 C.F.R. § 404.970(b).  When the district court does not address an issue, the better course of action often is to reverse the order of the district court and remand.  See, e.g., Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1331 n.5 (11th Cir. 2001); Beavers v. Am. Cast Iron Pipe Co., 975 F.2d 792, 800 (11th Cir. 1992); Osborne v. Folmar, 735 F.2d 1316, 1318 (11th Cir. 1984).  Because we conclude that the district court erred by not reviewing the decision of the Appeals Council in the light of Dr. Wilson's psychological report, we reverse and remand for the district court to undertake that review in the first instance.

### B.  The District Court Did Not Err By Refusing to Remand Ingram's Claim to the Commissioner Under Sentence Six.

Ingram also argues that the district court should have remanded under sentence six for the Commissioner to consider Dr. Wilson's evaluation, but we disagree.  Sentence six of section 405(g) provides the sole means for a district court

25

to remand to the Commissioner to consider new evidence presented for the first time in the district court:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). "The sixth sentence of § 405(g) plainly describes an entirely different kind of remand [from the fourth sentence], appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626, 110 S. Ct. 2658, 2664 (1990); see Melkonyan v. Sullivan, 501 U.S. 89, 98, 111 S. Ct. 2157, 2163 (1991) (The sixth sentence allows the taking of "new evidence . . . that was not available to the claimant at the time of the administrative proceeding."). A remand to the Commissioner is proper under sentence six when new material evidence that was not incorporated into the administrative record for good cause comes to the attention of the district court. See Milano v. Bowen, 809 F.2d 763, 766-67 (11th Cir. 1987) (ordering a sentence six remand based on evidence first properly submitted to the district court); Cherry v. Heckler, 760 F.2d 1186, 1193-94 (11th Cir. 1985) (same); Epps v. Harris, 624 F.2d 1267, 1273 (5th Cir. 1980) (same);

26

Johnson v. Harris, 612 F.2d 993, 998-99 (5th Cir. 1980) (same); see also Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (new evidence will not be considered for the first time on appeal in this Court for the purposes of a sentence six remand).

Our settled precedents establish that a sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review. In Caulder v. Bowen, for example, this Court discussed at length the nature of remand under sentence six of section 405(g). 791 F.2d 872, 875-77 (11th Cir. 1986); see also Finkelstein, 496 U.S. at 625-27 & n.6, 110 S. Ct. at 2664 & n.6 (discussing the difference between the two sentences and citing Caulder as an example of a sentence six remand). Unlike the claimants in Daniel or Bowen v. Heckler, Caulder did not submit evidence to the Appeals Council; instead, Caulder submitted new evidence to the district court and requested that the district court remand the case back to the Commissioner so that the Commissioner could consider the new evidence in the first instance. Caulder, 791 F.2d at 875. We held that evidence first presented to the district court could not be considered for the purposes of a sentence four remand because "a reviewing court is limited to the certified administrative record in examining the evidence," id. at 876, but we explained that a federal court "should remand a case to the Secretary to consider such evidence if a claimant makes a sufficient showing" under sentence

27

six, id.  We applied the three-part test of sentence six and held that Caulder had established that the evidence was new and material and that Caulder had good cause for failing to submit it to the Commissioner.  Id. at 877-78.

We also have held that remand under sentence six is appropriate for the Commissioner to consider new evidence that the Commissioner did not have an opportunity to consider because the evidence was not properly submitted to the Appeals Council.  In Milano v. Bowen, we concluded that a district court correctly evaluated a motion to remand under sentence six instead of sentence four because Milano had submitted additional evidence to the Appeals Council one day after the deadline for review.  809 F.2d at 765.  Because Milano did not timely submit the new evidence, "[t]he supplemental items submitted to the Appeals Council by Milano were neither included in the administrative record nor mentioned when the request for review was denied."  Id.  Because the Appeals Council refused to consider Milano's untimely evidence, we treated the evidence as if it had been first presented to the district court and held that "the district court properly evaluated the case under" sentence six.  Id. at 766.

In contrast with settled precedents like Caulder and Milano, a recent precedent clouds the issue.  In Vega v. Commissioner of Social Security, the claimant submitted new evidence to the Appeals Council, which denied review, and

28

the claimant argued on judicial review that the Appeals Council had provided "no indication that it meaningfully considered the new evidence." 265 F.3d 1214, 1218 (11th Cir. 2001). Although we framed the issue as "[w]hether the Appeals Council erred in failing to remand this matter to the ALJ on the basis of new and material evidence," we applied, based on the misleading dicta in <u>Falge</u>, the standard that governs the introduction of new evidence to a federal court under sentence six. <u>Id.</u> We did not explain whether the Appeals Council considered the evidence, whether the evidence had been properly submitted to the Appeals Council, or whether the evidence was a part of the administrative record. <u>Id.</u> Instead, we concluded that the evidence was new and material and good cause existed for the failure of the claimant to have submitted the evidence to the administrative law judge. We ordered the district court to remand "to the ALJ for consideration of Vega's post-hearing evidence." <u>Id.</u> at 1220.

Our discussion in <u>Vega</u> of sentence six is inconsistent with our earlier precedents in <u>Bowen v. Heckler</u>, <u>Caulder</u>, and <u>Milano</u>, the opinions of the Supreme Court in <u>Finkelstein</u> and <u>Melkonyan</u>, and the text of the statute. <u>See Robinson v. Turner</u>, 798 F.2d 1378, 1383 (11th Cir. 1986) (when panel opinions of this Circuit conflict, the earlier decision is controlling). In <u>Bowen v. Heckler</u>, this Court explained that remand is appropriate under sentence four when "the Appeals

29

Council did not adequately consider the additional evidence" but is appropriate under sentence six when "evidence, that was not before the Secretary, has been submitted for the first time to [a federal] court." 748 F.2d at 636. In Caulder, this Court explained that evidence in the administrative record could be considered under sentence four but applied the standard for sentence six to determine whether to remand a case to the Commissioner to consider evidence outside of that record. 791 F.2d at 876-78.

There is another problem with Vega. Although section 405(g) allows a remand to "the Commissioner," there is no provision in law for a court to remand "to the ALJ" as we stated in Vega. When a court remands to the Commissioner, under section 405(g), the remanded case returns to the Appeals Council, which may, in its discretion, then remand the case to the administrative law judge. See 20 C.F.R. § 404.983.

The district court correctly refused to remand Ingram's case under sentence six. Dr. Wilson's evaluation fails to meet the criteria for a sentence six remand because it is not "new evidence" that the Commissioner "failed to incorporate" into the record of the administrative proceeding. Dr. Wilson's evaluation was properly submitted to the Appeals Council, which considered the evaluation and incorporated it in the administrative record. Sentence six allows the district court to

remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously considered by the Appeals Council. Because evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record, that evidence can be the basis for only a sentence four remand, not a sentence six remand. See Nelson, 966 F.2d at 366 n.5 ("[O]nce the evidence is submitted to the Appeals Council it becomes part of the record, thus it would not make sense to require [the claimant] to present good cause for failing to make it part of a prior proceeding's record."); White v. Barnhart, 373 F. Supp. 2d 1258, 1265 (N.D. Ala. 2005) ("[T]he question [under the sixth sentence] is not whether there is good cause for failure to present the evidence at the ALJ level, but rather for failure to present it at the administrative level, which includes the Appeals Council stage."). To conclude otherwise, as both Ingram and the Commissioner contend, would be contrary to the plain meaning of the statute and our settled precedents, notwithstanding Vega.

C. *The Administrative Law Judge Did Not Fail to Develop the Record.*

Ingram erroneously argues that the administrative law judge failed to develop the record as to her mental capacity. Although the ALJ generally has an obligation to develop the record, the ALJ did not err by failing to inquire into Ingram's mental

31

capacity. Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision. Doughty, 245 F.3d at 1281.

The record contains ample evidence that Ingram's depression was alleviated by medication, and she was not so unintelligent as to require the administrative law judge to question her mental capacity and order a consultative examination on his own motion. Ingram graduated from high school with a regular diploma, successfully completed courses in both cooking and cosmetology, obtained a commercial driver's license, and worked previously as a teacher's aide. Ingram had an obligation to raise an issue as to her mental capacity at her hearing. The administrative law judge had enough information to resolve Ingram's application.

*D. The Administrative Law Judge Did Not Pose an Improper Hypothetical Question to the Vocational Expert.*

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir.

2002). Ingram argues that the hypothetical question that the administrative law judge posed to the vocational expert was improper because the question assumed Ingram could perform sedentary work and failed to include that Ingram suffered fatigue, insomnia, anxiety, and depression. We disagree.

The administrative law judge did not err by failing to include Ingram's fatigue, insomnia, anxiety, and depression in the hypothetical questioning. The hypothetical need only include "the claimant's impairments," id., not each and every symptom of the claimant. The characteristics that the administrative law judge omitted are among those that Ingram alleged to suffer but were either not supported by her medical records or were alleviated by medication.

The hypothetical question was proper. The administrative law judge asked the vocational expert what jobs Ingram could perform if she were unable to perform her past relevant work of housekeeper and bus driver, as both were performed at a greater than sedentary exertional level. The administrative law judge also asked the vocational expert what kind of work Ingram would be able to do if her subjective limitations were believed. The vocational expert's responses to these hypotheticals—that Ingram could find a job if she were limited to sedentary work but could not find a job if her recounting of her symptoms was believed—is substantial evidence to support the denial of benefits in the light of the

administrative law judge's determination that Ingram could perform sedentary work.

## IV.  CONCLUSION

The order of the district court granting summary judgment for the Commissioner is **AFFIRMED** in part and **REVERSED** in part.  We **REMAND** to the district court for further proceedings consistent with this opinion.