[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12471
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-02536-TBM

DWAYNE NORTON,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 10, 2015)

Before HULL, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Dwayne Keith Norton appeals the affirmance of the Social Security Administration's denial of his claim for disability and supplemental security income benefits.  He argues on appeal that the Administrative Law Judge ("ALJ") erred by failing to consider his complaint of urinary incontinence when denying his disability claim and by improperly applying the Medical-Vocational Guidelines ("Grids") without hearing testimony from a vocational expert ("VE"), after evidence demonstrated that he had a non-exertional limitation, namely urinary incontinence, that prevented him from performing the full range of medium work. Additionally, he contends that the district court erred by failing to remand the case for further consideration in light of additional evidence he submitted to the Appeals Council.  We will address each argument in turn.

## I. Subjective Complaints Before the ALJ

We review the Commissioner's decision for substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (quotations omitted).  This Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Id.*  The individual seeking Social Security disability benefits bears the burden of proving that he is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

2

We will review the Commissioner's legal conclusions *de novo*. *Id.* When the Appeals Council denies review of the ALJ's decision, we review the ALJ's decision as the Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

> The Commissioner uses
>
> a five-step, sequential evaluation process . . . to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on [the RFC] assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

20 C.F.R. § 404.1520(a)(4); *Winschel*, 631 F.3d at 1178. The RFC is "that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The ALJ considers all of the evidence in the record in determining the claimant's RFC. *Id.*

The ALJ must "articulate specific reasons for questioning the claimant's credibility" if subjective symptom testimony is "critical" to the claim. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also*

3

*Moore*, 405 F.3d at 1212 ("We recognize that credibility determinations are the province of the ALJ."). "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable . . . this Court to conclude that the ALJ considered [the] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotations and alterations omitted).

"It is well-established that the ALJ has a basic duty to develop a full and fair record." *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). Consequently, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)). The ALJ must consider all of the impairment evidence presented at the hearing, stating the weight accorded to each item and the reasons for accepting or rejecting the evidence. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990).

The ALJ adequately considered the evidence in the record at the time of the hearing related to Norton's present claim of urinary incontinence. The record before the ALJ only included a single reference to urinary issues, wherein Norton asked Dr. Biggers for an adult diaper prescription and for hydrocortisone ointment to deal with a rash caused by leaking urine. Importantly, the complaints to

Petschell and Dr. Fusia did not occur until months after the ALJ decision issued, and were therefore unavailable for consideration.

Substantial evidence also supported the ALJ's conclusion that Norton did not suffer from a severe impairment caused by urinary incontinence, which was not included in his application as a disabling impairment. Norton testified before the ALJ that he had to urinate once an hour as a result of his pain medication, but he did not include this complaint among his reasons he believed that he could not work. However, as the ALJ noted, Norton's subjective complaints were often not supported, and were sometimes contradicted, by objective findings in the medical records. Medical records indicated that he would not give full effort during exams, that he would claim pain when it did not appear warranted, and that he made requests for supplies and prescriptions that he did not need. Thus, substantial evidence also supported the ALJ's conclusion that Norton was not entirely credible in his testimony. *Foote*, 67 F.3d at 1562.

With no other evidence of urinary problems in the medical records, and his limited testimony regarding the impairment being not entirely credible, the ALJ adequately considered the evidence of his complaint, and did not err by concluding that Norton's urinary incontinence complaint was not a severe impairment. *Lucas*, 918 F.2d at 1574. Accordingly, we affirm in this respect.

## II. Medical-Vocational Guidelines

There are two ways in which the ALJ may determine whether a claimant has the ability to adjust to other work in the national economy: (1) by applying the Grids; or (2) by the use of a VE, an expert on the kinds of jobs an individual can perform based on his capacity and impairments. *Phillips*, 357 F.3d at 1239-40. It is not proper for the ALJ to rely exclusively on the Grids when the claimant is unable to perform a full range of work at a given exertional level. *Id.* at 1242. The Grids provide an algorithm to determine claimants' ability to engage in employment other than their past work based on factors such as a person's age, education, previous employment, and maximum physical capabilities. *Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985). Each variable on the appropriate Grid must "accurately [describe] the claimant's situation." *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987).

When looking specifically at non-exertional limitations, an ALJ "need only determine whether [the] non-exertional impairments significantly limit [basic] work skills," which include a wide range of work at a given work level. *Phillips*, 357 F.3d at 1243. If the ALJ determines that non-exertional limitations do not significantly limit basic work skills at the assigned work level, the ALJ may rely on the Grids to determine if a claimant is disabled; otherwise, the ALJ must consult a VE. *Id.*

6

Here, the ALJ concluded, at step four, that Norton retained the physical RFC to perform medium work, and that finding is undisputed on appeal. The ALJ concluded that Norton did not have any non-exertional limitations, and, as noted in Issue One, supra, substantial evidence supported the ALJ's decision not to consider Norton's urinary incontinence claim as a limitation on his ability to perform medium exertion work. Norton has not argued that there were any other non-exertional limitations that the ALJ should have recognized, thereby requiring VE testimony, and, as such, the ALJ was justified in relying solely on the Grids. *Phillips*, 357 F.3d at 1243. The ALJ noted that Norton had changed age categories under the Grids between the time he filed his application and the time of his hearing, but, applying the appropriate guideline for either age category, each criterion of which described Norton, the ALJ correctly concluded that Norton was not disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. II, §§ 203.21 and 203.28; *Walker*, 826 F.2d at 1003. Accordingly, we affirm in this respect, as well.

### III. Denial of Motion for Remand

We review a magistrate's decision regarding the necessity of a remand to the Commissioner based on new evidence *de novo*. *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001).

A claimant is generally permitted to present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253,

1261 (11th Cir. 2007). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.* (quotation omitted). The Appeals Council must "adequately evaluate" new evidence. *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980) (remanding so that a determination of disability could be made on the record as a whole where the Appeals Council had "perfunctorily adhered to the decision of the hearing examiner" without sufficiently evaluating the new evidence). The Appeals Council is not required to provide a detailed explanation of the claimant's new evidence when denying a request for review. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784-85 (11th Cir. 2014).

Where a claimant seeks review in a federal court of the Commissioner's final decision, the district court may remand the case to the Commissioner using two methods under 42 U.S.C. § 405(g): "sentence four" remands and "sentence six" remands. *Ingram*, 496 F.3d at 1261. Sentence four and sentence six remands serve different purposes. *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996). "[A] sentence-four remand is based upon a determination that the Commissioner erred in some respect in reaching the decision to deny benefits," whereas "[a] sentence-six remand does not result from any error by the Commissioner." *Id.*

8

Under the fourth sentence of § 405(g), the district court may affirm, modify, or reverse the Commissioner's decision, with or without remanding for rehearing. *Ingram*, 496 F.3d at 1261. Sentence four is applicable when the evidence was properly before the Commissioner, but "the Appeals Council did not adequately consider the additional evidence." *Id.* at 1268 (quotation omitted). A sentence four remand is warranted only where the Commissioner's decision was not supported by substantial evidence or where the Commissioner or ALJ incorrectly applied the relevant law. *Jackson*, 99 F.3d at 1092.

Under the sixth sentence of § 405(g), the district court may remand the case "to the Commissioner for the taking of additional evidence upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Ingram*, 496 F.3d at 1261 (quotation omitted). The evidence must also be noncumulative. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). A sentence six remand is "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). The district court is not authorized by sentence six "to

9

remand for reconsideration of evidence previously considered by the Appeals Council." *Ingram*, 496 F.3d at 1269.

Here, Norton's contention that remand was necessary because the Appeals Council did not adequately evaluate his newly submitted evidence is meritless. The Appeals Council stated that it had considered the additional evidence, listed what that specific evidence was, and concluded without elaboration that the evidence did not provide a basis for changing the ALJ's decision. The Appeals Council was not required to provide a thorough explanation of its decision. *Mitchell*, 771 F.3d at 784-85. Additionally, although Norton submitted several pieces of new evidence, the Appeals Council was only required to consider those that related to the period on or before the August 2011 ALJ hearing decision. *See* 20 C.F.R. § 416.1470(b). Accordingly, although the Appeals Council did not acknowledge this fact, the urology records from 2012 were not properly a part of the administrative record. *See id.*

Next, the magistrate judge did not err in refusing to remand Norton's case. There was no error under sentence six because, although the evidence was new and noncumulative, and Norton had good cause for failing to produce the records before the ALJ, because they did not yet exist, the records were not material because they would not have changed the outcome of the proceeding. *See Sullivan*, 496 U.S. at 626, 110 S.Ct. at 2664; *Ingram*, 496 F.3d at 1261. Although

10

Norton complained of 6 to 12 months of urinary issues when he first sought treatment from Dr. Fusia, and he was given several prescriptions to resolve his frequent urination, there were no objective findings that supported his subjective complaints, and no indication that his frequent urination prevented him from performing the full range of medium work.  Even assuming his complaint was true, the ALJ was already aware of his urinary issues through the records from Dr. Biggers and Norton's hearing testimony, and thus it did not appear probable that the new evidence would have produced a different result.  *Hyde*, 823 F.2d at 459. On the above, the magistrate judge did not err in refusing to remand Norton's case for consideration of the additional medical records, and thus we affirm the district court's denial of Norton's motion for remand.

    **AFFIRMED.**