[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

———————————————

No. 23-12796

Non-Argument Calendar

———————————————

BROOKS RICH,

Plaintiff-Appellant,

*versus*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14334-SMM

———————————————

Before NEWSOM, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

Brooks Rich appeals the District Court's order affirming the Social Security Commissioner's denial of his application for supplemental security income benefits (SSI), period of disability and disability insurance benefits (DIB), and child's insurance benefits (CIB). Rich argues that the administrative law judge (ALJ) erred as a matter of law by failing to evaluate the persuasiveness of his psychologist's work recommendations within the psychologist's neuropsychological evaluation. For the reasons below, we agree with Rich.

## I. Background

In December 2019, 33-year-old Rich applied for SSI. In February 2020, he applied for a period of disability and DIB, and in October 2020, he protectively applied for CIB. His alleged onset date was his date of birth, January 12, 1986, alleging that he had cerebral palsy and attention deficit disorder. His applications were denied in 2020 and again upon reconsideration. He then requested a hearing before an ALJ. Before the hearing, Rich submitted a neuropsychological evaluation report by Dr. Eileen Messing, a licensed psychologist, which is the only relevant medical record for his appeal.

Dr. Messing's report, which has Rich's name at the top of every page, notes that he has a history of cerebral palsy and ADHD. Her diagnostic impressions of Rich include major neurocognitive history due to cerebral palsy, ADHD, and specific learning disorder

with impairment in mathematics. She recommended sharing the report with HR for work accommodations[1] and summarized referral information from Rich's neurologist, as well as Rich's medical, educational, and vocational history. Dr. Messing also listed the tests she administered, included Rich's results, assessed his performance, and reported his overall intellectual functioning.

Dr. Messing concluded her report with recommendations for managing neurocognitive disorder and ADHD in the workplace. She recommended Rich have more time for tasks, a structured and less stressful work environment, use time management aids, and a flexible or part-time schedule.

The ALJ issued a decision, finding Rich not disabled and denying his applications for CIB and SSI. The ALJ discussed his findings on Rich's residual functional capacity (RFC). The ALJ found the following: Rich had the RFC to perform medium work, except that he could frequently use his left arm in any direction and frequently finger with his bilateral hands; there were no postural limitations; he must avoid concentrated exposure to vibrations and hazards; and he was limited to simple and repetitive tasks and occasional changes to work settings.

Within this section, the ALJ summarized the medical records he reviewed and evaluated their persuasiveness. The ALJ referenced Dr. Messing's report in one paragraph, stating as follows:

---

[1] At the time of the evaluation, Rich worked as an office assistant at a psychology office.

Dr. Silvers referred the claimant to Eileen Messing, Psy.D., on March 15, 2019 for a neuropsychological evaluation. The claimant presented independently for the interview. He reported being in good health aside from the cerebral palsy diagnosis. He presented with an abnormal, but independent gait. He took no daily medications. He denied a history of mood disorder, but presented with a longstanding history of ADHD diagnosis. The claimant reported that he was working on a full-time basis as an office assistant at a psychology office. He further reported that he worked as an office assistant for the past few years. The claimant also reported part-time work history as an aftercare counselor and a sailing instructor. Dr. Messing documented that the previous neuropsychological testing indicated that the claimant has a neurocognitive disorder. Dr. Messing diagnosed the claimant with major neurocognitive disorder due to another medical condition (cerebral palsy) without behavioral disturbance; ADHD, predominantly inattentive presentation (by history); and specific learning disorder with impairment in mathematics (by history). Once again, while objective findings confirm the presence of severe impairments, the level of severity indicated by the clinical findings does not substantiate the claimant's subjective allegations.

After granting Rich's request for review, the Appeals Council (AC) adopted the ALJ's findings and conclusions regarding Rich's claimed disability and "adopt[ed] the findings of persuasiveness identified for each opinion as specified in the hearing decision."

23-12796                Opinion of the Court                5

The AC added its own findings on Rich's application for period of disability benefits and DIB, without any discussion of the medical records, and the AC ultimately concluded that Rich was not entitled to a period of disability benefits or DIB, CIB, or SSI.

Rich petitioned the District Court for review of the ALJ's decision.  A magistrate judge affirmed the Commissioner's decision to deny Rich's applications.[2]  Rich timely appealed.

## II.  Legal Standard

We review *"de novo* the Commissioner's conclusions of law." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Id.* (citation omitted).  "The ALJ has a basic duty to develop a full and fair record." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam).  We may not "decide the facts anew, make credibility determinations, or re-weigh the evidence." *Id.* (alterations adopted and citation omitted).

Further, a party abandons an issue when he fails to raise it plainly and prominently on appeal.  *See Sapuppo v. Allstate Floridian*

---

[2] Because we review the Commissioner's final decision and "neither defer to nor consider any errors in the district court's opinion," discussion of the district court proceedings, including the arguments and the court's final order and rationale, has been limited.  *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam).

*Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Simply stating that an issue exists, without further argument or discussion, precludes our consideration of that issue on appeal. *Id.* (quotation marks and citation omitted).

### III. Discussion

Rich argues that the ALJ erred as a matter of law because the ALJ did not evaluate Dr. Messing's medical opinions for supportability and consistency under the RFC analysis. He does not otherwise challenge the factual findings made by the ALJ. The Commissioner argues that the ALJ did not have to consider that report because it was not a "medical opinion" under the regulations. The Commissioner does not otherwise argue that the ALJ nonetheless properly evaluated the persuasiveness of Dr. Messing's report. The Commissioner also asserts in a sentence, without citations or supporting arguments, that substantial evidence supports the findings that Rich could perform other work existing in significant numbers in the national economy.

The social security regulations outline a five-step process the ALJ must use to determine whether a claimant is disabled: (1) whether he is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals the medical listings; (4) if not, whether he can perform his past relevant work in light of his RFC; and (5) if not, whether, based on his age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R.

23-12796                Opinion of the Court                7

§ 404.1520(a)(4); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

At step four, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is an assessment of a claimant's ability to work despite impairments. *Id.* § 404.1545(a)(1). In formulating an RFC, the ALJ examines all relevant medical and other evidence, including statements provided by medical sources and descriptions and observations of the limitations. *Id.* § 404.1545(a)(3).

For claims filed on or after March 27, 2017, a medical opinion "is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in certain enumerated abilities. *Id.* § 404.1513(a)(2).[3] The ALJ must "not defer or give any specific evidentiary weight,

---

[3] These include the "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)"; the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting"; the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and the "ability to adapt to environmental conditions, such as temperature extremes or fumes." *Id.* § 404.1513(a)(2).

including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." *Id.* § 404.1520c(a). Instead, the ALJ should consider medical opinions using the factors listed in paragraphs (c)(1) through (c)(5). *See id.* 404.1520c(a). Those factors are (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c).

The most important factors ALJs must consider when evaluating the persuasiveness of medical opinions are supportability and consistency. *Id.* § 404.1520c(a). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). The ALJ must explain how he analyzed the supportability and consistency of a medical source's opinion. *Id.* § 404.1520c(b)(2).

As an initial matter, any issues on the ALJ's factual findings or whether substantial evidence supports the ALJ's decision are

23-12796                Opinion of the Court                9

abandoned because neither party raises such issues plainly and prominently on appeal.  Thus, we need not consider them.

As for Dr. Messing's work recommendations, they are medical opinions as defined in the regulations because she tailored those recommendations to Rich's diagnoses of neurocognitive disorder and ADHD by addressing his impairment-related limitations and what he could do at work based on his diagnoses.  Her recommendations related to his "ability to perform mental demands of work activities."  *See id.* § 404.1513(a)(2); *Id.* § 416.913(a)(2).  She recommended that Rich has more time to complete work commitments and that he be aware of potential ineffective time management to help him fix such an issue.  She also recommended a job with more structure, less stress, a slower pace, and fewer operating variables to avoid creating more anxiety, indicating that he could work at jobs with those characteristics.  She further recommended that he have a notepad on his desk to keep track of his activities so that if he were to be interrupted, he could get back to the task at hand.

Accordingly, we reject the Commissioner's argument that Dr. Messing's recommendations were just generalized statements.  The Commissioner argues that Dr. Messing used terms like individuals and adults rather than repeatedly using Rich's name, but that is an overly narrow and technical reading of the document.  Rich's name was on every page.  Further, the recommendations that used the terms adult and individual were for conditions that Dr. Messing diagnosed Rich as having.  The Commissioner's

argument to narrowly read the document in question would run counter to the ALJ's responsibility to develop a full and fair record.

Because Dr. Messing's work recommendations are medical opinions, the ALJ was required to evaluate their persuasiveness, specifically as to their supportability and consistency. Though the ALJ summarized Dr. Messing's observations and Rich's test results, the ALJ did not mention her work recommendations anywhere under the RFC analysis. Considering that RFC is an assessment of a claimant's ability to work despite impairments, Dr. Messing's work-related recommendations could have affected a finding of whether Rich could or could not work despite his impairments. The ALJ only addressed her "objective findings" and "clinical findings," not supportability or consistency. As such, the ALJ did not properly evaluate the persuasiveness of Dr. Messing's report, particularly as it pertains to her recommendations. Thus, we lack sufficient reasoning to determine that the proper legal analysis had been conducted as required under § 404.1520c.

## IV. Conclusion

Based on the above, we **REVERSE** the magistrate judge's decision and **REMAND** to the District Court with instructions to vacate the Commissioner's decision and to remand to the Commissioner for further proceedings.