[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 18, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-12628
Non-Argument Calendar

_____

D. C. Docket No. 06-02252-CV-T-30-TGW

DENNIS SANABRIA,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 18, 2008)**

Before ANDERSON, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Dennis Sanabria appeals the district court's order affirming the

final decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. First, Sanabria asserts that the Administrative Law Judge ("ALJ") erred by giving little weight to the opinion of Sanabria's treating neurologist. Second, Sanabria argues that the ALJ erred by failing to understand the impact of Sanabria's impairments on his ability to function in the workplace. Finally, Sanabria argues that the ALJ erred in allowing the vocational expert ("VE") to leave the hearing prior to the completion of Sanabria's testimony. For the reasons set forth below, we affirm.

## I. BACKGROUND

In 1992, Sanabria experienced a pulmonary embolus and a syncopal episode. He was treated by a cardiologist and pulmonary specialist. Initially, he was released to full work activity by both specialists. However, in January of 1996, Sanabria was restricted to light work activity due to an unfavorable decline in pulmonary function. Sanabria initially applied for disability insurance benefits on January 10, 1997. On June 26, 1997, Sanabria was involved in a motor vehicle accident resulting in central disc protrusions at the lower four levels of the cervical spine with effacement of the cervical cord at the lower two levels. He began treatment with neurologist, Robert Martinez. After a hearing, an ALJ denied Sanabria's claim for benefits and the administrative Appeals Council ("Council")

2

denied his request for review.  Sanabria appealed to the United States District Court for the Middle District of Florida.  On November 13, 2000 the district court remanded the case after determining that the ALJ's credibility determination was flawed and that the ALJ relied on statements of the plaintiff's daily activities that did not reflect his subsequent car accident.  On remand, the same ALJ again denied Sanabria's application.  The Council remanded, instructing a new ALJ to evaluate the opinion of Sanabria's treating neurologist, Dr. Martinez, and explain the weight given to this evidence.  The Council also directed the ALJ to obtain testimony from a vocational expert to clarify the effect of Sanabria's limitations on his occupational base.

Subsequently, a third hearing was conducted by a new ALJ.  The ALJ determined that Sanabria suffered from several impairments that in combination were severe.  The ALJ assessed Sanabria's functional limitations as follows:

> He was able to lift and carry up to twenty pounds occasionally and less than twenty pounds frequently and was able to sit or stand throughout an eight-hour day providing he could alternate positions as needed for comfort.  He required a temperature-controlled environment without exposure to temperature extremes, dusts, fumes or gases.  He had to avoid work around moving machinery and jobs requiring climbing, balancing or driving.

Although the ALJ determined that Sanabria could not return to his previous work as a firefighter, he found that Sanabria could perform a restricted range of light

3

work sufficient to obtain a job available in the national economy. Accordingly, the ALJ determined that Sanabria was not disabled. On December 7, 2006, Sanabria filed this action in the Middle District of Florida.

## II. STANDARD OF REVIEW

We review <u>de novo</u> the judgment of the district court. <u>Ingram v. Comm'r of Soc. Sec. Admin.</u>, 496 F.3d 1253, 1260 (11th Cir. 2007). We review the ALJ's decision to determine if it is supported by substantial evidence and based on proper legal standards. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." <u>Id.</u> at 1158-59 (internal quotations and citation omitted). In conducting this review, we may not reweigh the evidence or substitute our judgment for that of the ALJ. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). We review <u>de novo</u> the Commissioner's conclusions of law. <u>Ingram</u>, 496 F.3d at 1260 (11th Cir. 2007).

## III. DISCUSSION

First, we discuss whether there is substantial evidence to support the ALJ's decision to give little weight to some of the opinion of Sanabria's treating

4

physician.  Then, we address Sanabria's argument that the ALJ failed to adequately consider all of his impairments.  Finally, we discuss whether the ALJ erred by allowing the VE to leave the hearing before the conclusion of Sanabria's testimony.

A.  <u>Whether the ALJ Erred by Failing to Give Proper Weight to the Opinion of Sanabria's Treating Neurologist</u>

We find no reversible error.  Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion of a treating physician.  <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1159 (11th Cir. 2004); <u>see also</u> 20 C.F.R. § 404.1527(d)(2).  Good cause exists when the treating physician's opinion is not supported by the evidence or when the opinion is conclusory or inconsistent with the physician's own medical records.  <u>See</u> <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).  Sanabria began treatment with neurologist Robert Martinez in October of 1997.  The social security regulations state:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(d)(2).  Here, the ALJ determined:

The objective medical evidence does not confirm the severity of the

5

alleged symptoms, nor does the weight of the medical and non-medical evidence demonstrate the presence of impairments that reasonably could be expected to produce symptoms and functional limitations to the degree alleged by the claimant.[1]

Thus, under the regulations, the ALJ was not required to give the opinion of Dr. Martinez controlling weight.

When the opinion of the treating physician is not given controlling weight, the ALJ must give good reasons for the weight given to the opinion. Id. The ALJ considers six factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the amount of relevant medical evidence to support the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialty of the treating physician; and (6) any other factors brought to the attention of the ALJ. Here, the ALJ concluded that, beginning in November of 1999, the opinion of Dr. Martinez regarding Sanabria's functional limitations was entitled to little weight. In November of 1999, Dr. Martinez completed a functional capacity statement in which he indicated that Sanabria suffered from strict functional limitations, including, among other assessments, that the claimant could sit, stand or walk for

---

[1]    The ALJ stated: "Even Dr. Martinez reported no neurological deficits and certainly no muscle atrophy, muscle weakness, reflex loss or sensory decrease that reasonably could be expected with disc herniation, spinal stenosis and/or nerve root involvement productive of the symptoms alleged by the claimant." Appellant has not specifically challenged this finding.

6

no more than one hour each in an eight-hour workday. The ALJ stated several reasons for concluding that the opinion of Dr. Martinez was entitled to little weight beginning in November of 1999: (1) prior to November of 1999, Dr. Martinez did not provide specific functional limitations indicative of a 100% disability rating and there was no significant change in Sanabria's condition at that time; (2) Dr. Martinez reported no neurological deficits, muscle atrophy, muscle weakness, reflex loss or sensory decrease that would be expected, considering claimant's condition, to produce the symptoms Sanabria alleged; (3) Dr. Field concluded that Sanabria could undertake sedentary activities; (4) while Dr. Field acknowledged that the claimant suffered from chronic pain, he felt that Sanabria was able to handle the pain well because he did not show any real symptoms of significant distress during his examination.

Sanabria presents substantial arguments refuting these points. First, he notes that Dr. Martinez consistently found Sanabria unable to work all through 1998 and 1999. Dr. Martinez's reports contain statements such as "the patient has never been able to return to work," "he has been unable to work or function," "he has been unable to work, unable to function, unable to do anything uninterruptedly because of his pain." It is unclear if Dr. Martinez was stating his opinions or

7

simply recording Sanabria's complaints.[2]  However, the ALJ's opinion took these statements into account.  The opinion stated that throughout 1999 Dr. Martinez "noted an alleged inability to work due to a combination of cardiac, pulmonary and musculoskeletal impairments."  Given that the ALJ expressly considered this evidence, we will not reweigh its significance or substitute our judgment for that of the ALJ.

Second, Sanabria argues that his symptoms did change during 1999.  The ALJ opinion stated: "Throughout 1999, Dr. Martinez reported no real change in symptoms or findings on physical examination."  However, on June 10, 1999, Dr. Martinez reported that Sanabria experienced bilateral arm and leg pain with periodic tingling of the fingertips of both hands that tended to come and go.  Although the ALJ did not specifically take note of the fact that Sanabria raised these complaints in 1999, the ALJ did consider evidence of these symptoms.  The opinion states that on evaluations by Dr. Martinez during 2000 and 2001, "[t]here continued to be no motor, sensory or reflex abnormalities despite allegations of some arm and leg pains and some tingling in the hands."  Furthermore, the section of Dr. Martinez's reports listing the results of his physical examination of Sanabria

---

[2]  At the beginning of the opinion, the ALJ noted that he requested the transcript of depositions that had been given in other proceedings from treating sources, particularly those of Dr. Martinez.  However, counsel provided him only with the attending physician statements of Dr. Martinez to an insurance company.

and his list of neurological impressions did not change significantly during 1999.

Finally, Sanabria argues that as a one-time orthopedic consultant Dr. Field's opinion should not have been accepted to the extent it conflicted with Dr. Martinez's opinion. The length of the treatment relationship and the frequency of examination is a relevant factor in determining the weight given to a medical opinion. 20 C.F.R. § 404.1527(d)(2)(i). However, the ALJ is required to evaluate every medical opinion he or she receives. Id. § 404.1527(d). Here, there is no indication that the ALJ gave Dr. Field's opinion undue weight. The ALJ relied on numerous grounds to support his conclusion that Dr. Martinez's opinion of Sanabria's limitations should be given little weight after November of 1999. First and foremost, the ALJ found that the severity of Sanabria's alleged symptoms were out of proportion to the objective medical evidence. He also determined: (1) Sanabria had a financial incentive to exaggerate his symptoms; (2) many of his complaints were never substantiated on physical examination; and (3) despite allegations of incapacitating pain for several years he did not undergo further testing or pursue the more intensive treatments recommended by Dr. Martinez. Thus, we conclude that there is substantial evidence to support the ALJ's decision to give little weight to the opinion of Dr. Martinez.[3]

---

[3]     Unlike the district court, we find nothing inherently contradictory about Dr. Martinez's determination that Sanabria had a 23% permanent impairment rating to the body as a

The ALJ also determined that Dr. Martinez's statements regarding the claimant's disability status were entitled to little weight. He found such statements conclusory determinations on issues reserved for the Commissioner. We find no error. Whether a claimant meets the statutory definition of disability is an administrative finding determined by the Commissioner. 20 C.F.R. § 404.1527(e). Thus, we conclude there is substantial evidence to support the ALJ's decision to give little weight to the opinion of Dr. Martinez beginning in November of 1999.

B. Whether the ALJ considered all of plaintiff's impairments

Sanabria argues, in essence, that the ALJ did not appreciate the severity of his impairments. We find no reversible error. First, Sanabria argues that the ALJ erroneously concluded that protruded discs were not a severe impairment. The record establishes the opposite. The ALJ's opinion recognized that "the claimant did have a severe combination of impairments." Among the listed impairments was "central disc protrusions at the lower four levels of the cervical spine with effacement of the cervical cord at the lower two levels." Sanabria also argues that the ALJ erroneously failed to list lightheadedness and dizziness as severe

---

whole and his subsequent conclusion that Sanabria was 100% permanently disabled. However, we note that the ALJ did not rely on this reasoning in his decision. The ALJ determined that there was a contradiction in Dr. Martinez's assessment of Sanabria's functional limitations. For example, his sudden conclusion in November of 1999 that Sanabria could sit, stand or walk for no more than one hour each in an eight-hour workday.

impairments. However, the ALJ's opinion set forth evidence of these symptoms and explicitly stated: "I must consider all the evidence, including the claimant's own description of his symptoms and how these symptoms kept him from working." Thus, with respect to Sanabria's impairments, there is substantial evidence to support the ALJ's decision.

C. <u>Whether the ALJ erred in allowing the VE to leave before the conclusion of the hearing</u>

Sanabria asserts that by allowing the VE to leave before he completed his testimony, the ALJ: (1) violated an order from the Council; (2) failed to develop a full and fair record; and (3) deprived him of due process because he was not able to cross-examine the VE based on the entire record. We address each argument in turn.

The order of the Council directed the ALJ to "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupation base . . . . The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole." On appeal of the ALJ's decision, the Council itself noted:

> [W]hile the vocational expert did not have access to all testimony presented at the hearing, she did provide a response to the hypothetical question that was reflective of the residual functional capacity determined by the Administrative Law Judge in the hearing decision. The hearing process does not require that a vocational

11

expert interpret testimony, but rather that a vocational expert respond to questions from an Administrative Law Judge based on the Administrative Law Judge's interpretation of evidence and testimony. The Administrative Law Judge considered all evidence of record, including the testimony at the hearing and determined a residual functional capacity consistent with the conditions in the hypothetical question presented to the vocational expert. Therefore, it is not necessary for the vocational expert to hear additional testimony or to recontact the vocational expert to provide an additional hypothetical question.

Thus, we find no error in the district court's determination that the Council's order was not violated.

The ALJ has a duty to fully and fairly develop the record. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). After the VE left the hearing, Sanabria testified to the following symptoms: dizziness, lightheadedness, inability to read and the need to lie down frequently. The VE was never informed of this additional testimony. The function of a VE is to answer hypothetical questions posed by the ALJ regarding whether a person with specified limitations will be able to secure employment in the national and local economy. 20 C.F.R. § 404.1560(b)(2); see Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). It is the ALJ, not the VE, who is responsible for reviewing the medical findings and other evidence in order to make the ultimate determination of whether a claimant meets the statutory definition of disability. See 20 C.F.R. § 404.1527. Furthermore, the ALJ is not required to pose a hypothetical question assuming

12

limitations that the ALJ does not find credible.  Crawford v. Comm'r of Soc. Sec.,
363 F.3d 1155, 1160 (11th Cir. 2004).  Therefore, allowing the VE to leave early
did not result in the failure to fully and fairly develop the record.

Accordingly, we find no error in the ALJ's decision to allow the VE to leave
the hearing before Sanabria finished his testimony.[4]

## IV.  CONCLUSION

For the foregoing reasons, the opinion of the district court is affirmed.

AFFIRMED.

---

[4]     Sanabria's due process claim is meritless.  Sanabria cross-examined the VE at the conclusion of her testimony.  He could and did pose hypothetical questions including additional limitations not recognized by the ALJ.