[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13325
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cv-00073-BAE-GRS

BARRY L. JONES,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,
SOCIAL SECURITY ADMINISTRATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(March 2, 2015)

Before MARCUS, WILLIAM PRYOR and FAY, Circuit Judges.

PER CURIAM:

Barry L. Jones appeals the district judge's order affirming partial denial by the Social Security Commissioner of his application for a period of disability insurance benefits commencing on March 31, 2009.  We affirm.

## I.    BACKGROUND

Jones, a construction worker, first noticed symptoms of low-back pain that radiated down his left leg in 2008.  He had lumbar-fusion surgery in May 2009 with some relief, but his symptoms recurred.  In October 2009, Jones filed an application for disability benefits under Title II and Part A of Title XVIII of the Social Security Act and alleged he became disabled on March 31, 2009, when he was 48.  His application was denied initially and upon reconsideration.

Through counsel, Jones requested and was granted an administrative hearing before an administrative law judge ("ALJ").  In proceedings before the ALJ, Jones asserted he suffered chronic pain that significantly affected his daily function.  He represented he spent most of the day lying on a couch.

A.    Evidence in ALJ Proceedings

The treatment notes of Dr. Raphael R. Roybal, who treated Jones for his back pain and began seeing him in June 2008, provided a description of Jones's back condition.  Dr. Roybal's treatment notes from March 2009 state Jones

2

suffered from "isthmic spondylolysis with a retrospondylolisthesis at L4-L5."[1]  R. at 468.  On May 4, 2009, Dr. Roybal and Dr. Christopher Senkowski performed anterior-lumbar, interbody-fusion surgery on Jones to correct the problem.  Dr. Roybal saw Jones on May 15, 2009, approximately ten days after surgery, and noted Jones was doing very well, his back pain had resolved significantly at that juncture, and Jones was not taking any pain medication.

On June 12, 2009, shortly more than one month after surgery, Dr. Roybal found Jones was doing well and had significant reduction in his lower back pain.  At that time, Jones was not taking any pain medication.  Dr. Roybal recommended Jones begin isometric core strengthening and protective lifting, as long as he did not lift weights over 30 pounds.

On July 17, 2009, Dr. Roybal recorded that Jones was not taking any pain or anti-inflammatory medication.  Jones reported he still had back pain but he was exercising on his own and walking significantly.  Dr. Roybal recommended that Jones take anti-inflammatory medication for his back pain.

---

[1]  "Spondylolysis" is a condition where there is a defect in a portion of the spine called the "pars interarticularis," which is a small segment of bone joining the facet joints in the back of the spine.  *See* http://www.spine-health.com/conditions/spondylolisthesis/spondylolysis-and-spondylolisthesis.  With the condition of "spondylolisthesis," the pars interarticularis defect can be on one or both sides of the spine.  *Id.*  "Isthmic spondylolisthesis" is when one vertebral body is slipped forward over another.  *Id.*  "Retrospondylolisthesis" is the slipping posteriorly of a vertebra, bringing it out of line with adjacent vertebrae.  http://www.medilexicon.com/medicaldictionary.php?t=78077.

Dr. Roybal saw Jones again on October 16, 2009. Jones again reported having back pain but he still was not taking any pain or anti-inflammatory medication. Dr. Roybal stated that Jones had no deficit in motion with flexion or extension and recommended Jones maximize his core strengthening rehabilitation. Dr. Roybal stated his opinion Jones could begin transitioning to light duty at that time, and he again recommended anti-inflammatory medication.

Jones next saw Dr. Roybal on January 15, 2010, and reported Jones was relatively unchanged since his October 2009 visit. Jones still had back pain, which he rated at six out of ten, and he complained of pain in his left leg extending in his anterior and posterior thigh down to his knee. Jones's physical examination results showed he had appropriate sensation in his bilateral and lower extremities and "5/5 range of motion and muscular strength" in his hips, knees, and ankles. R. at 635. Dr. Roybal prescribed Mobic to manage the "flare up" of Jones's symptoms; Jones was advised to follow up on an as needed basis. R. at 635.

On December 17, 2009, State Agency Medical Consultant Dr. Sherry Crump completed a Physical Residual Functional Capacity ("RFC") Assessment of Jones based on the record evidence, including Dr. Roybal's treatment notes. Dr. Crump determined Jones could (1) occasionally lift or carry up to 20 pounds, (2) frequently lift or carry up to 10 pounds, (3) stand, walk, or sit with normal

4

breaks for a total of about 6 hours in an 8-hour day, and (4) push or pull within the stated weight limitations.

On August 10, 2010, State Agency Medical Consultant Dr. Stephen Burge completed another RFC Assessment of Jones and reached the same conclusions. Dr. Burge noted, however, Jones had a speech impediment, stuttering and a moderate fluency disorder, that would limit his ability to engage in public speaking, customer service, sales, telephone, and complex verbal interactions.

At the June 1, 2011,  hearing before the ALJ, Jones was represented by counsel.  Jones testified he was a high-school graduate.  At the time of the hearing, he was taking meloxicam, a non-narcotic prescription pain medication.  He represents the pain medication did not help him at all.  After his May 4, 2009 surgery, Jones felt better for a short time, but the pain eventually became increasingly worse.  At the time of the hearing, his back pain was worse than it had been before the surgery.

Jones stated that his back pain affected his sleep, and he slept for only about four hours without interruption.  Additionally, Jones had difficulty showering, especially stepping in and out of the shower.  Jones had trouble dressing himself, and his mother, who lived with him, had to put his shoes and socks on him because he could not bend down far enough to do so himself.

Jones said he spent most of his days lying on a couch and in bed. He could walk about 50 feet before having to stop because of back pain. Jones drove occasionally, and the longest distance he had driven in the past year was about 12 miles to his doctor's office. He testified that amount of driving caused him pain.

A vocational expert ("VE") classified Jones's past work as "medium to very heavy" and unskilled to low-end, semi-skilled. R. at 86. The VE testified that Jones did not have any skills transferrable to a sedentary job. Jones's counsel asked what positions would be available to someone of Jones's age, with similar education and past relevant work, who could do light work that did not involve vibrating machinery, too much oral communication, or any bending, squatting, stooping, or climbing. The VE responded that such a person could obtain the positions of ticket taker, office helper, or assembler. Of those positions, the VE explained, ticket taker and office helper would be able to sit or stand at will.

B.    ALJ Decision

In a written decision, the ALJ determined Jones was not disabled prior to January 28, 2011, his 50th birthday, but became disabled as of that date. The ALJ concluded that, prior to January 28, 2011, Jones had RFC sufficient to perform light work as defined in 20 C.F.R. § 404.1567(b), with the limitations he (1) had to avoid vibrating machinery, (2) could do occasional squatting, stooping, bending, and climbing of ropes and scaffolds; and (3) could do no work involving oral

6

reports and communication.  The ALJ noted Jones's testimony was that he had experienced some relief for a short period after his May 2009 surgery.

The ALJ also determined the medical evidence of record supported the RFC assessment.  In relevant part, the ALJ noted, in October 2009, Dr. Roybal had released Jones to light duty, and, at Jones's January 2010 appointment, Dr. Roybal saw his condition was relatively unchanged.  The ALJ concluded Jones's statements, regarding the intensity, persistence, and limiting effects of his symptoms were not credible prior to January 28, 2011, to the extent they were inconsistent with the RFC assessment.

Prior to January 28, 2011, the ALJ noted Jones was a "younger individual age 18-49," but, as of January 28, his age category changed to "an individual closely approaching advanced age," under 20 C.F.R. § 404.1563.[2]  R. at 66. Before January 28, 2011, there were jobs Jones could have performed that existed in significant numbers in the national economy.  Based on the VE's testimony, the ALJ explained, Jones could have made a successful adjustment to other work that existed in significant numbers in the national economy prior to January 28, 2011.

---

[2] The regulations state that the Commissioner considers a claimant's chronological age, in combination with other facts, to determine whether he is disabled under 20 C.F.R. § 404.1520(g)(1).  *See* 20 C.F.R. § 404.1563(a).  For a person in the age category of "[p]erson closely approaching advanced age," 50 to 54, the Commissioner will "consider that [a claimant's] age along with a severe impairment(s) and limited work experience may seriously affect [a claimant's] ability to adjust to other work."  *Id.* § 404.1563(d).

7

Beginning January 28, 2011, however, considering Jones's age, education, work experience, and RFC, no jobs existed in significant numbers he could perform.

C.    Appeals Council Proceedings

Jones requested that the Appeals Council ("AC") review the ALJ's decision. He argued remand was required for consideration of new material evidence that was not available at the time of the ALJ's decision.  In support of his argument, Jones relied upon a post-hearing letter addressed to his counsel from Dr. Roybal, dated August 26, 2011, which stated:

> Barry Jones was under my care from June 12, 2008, until January 15, 2010, for treatment of the lumbar spine.  On May 4, 2009, after conservative treatment failed, I performed anterior lumbar interbody fusion at 4-5.  I never assigned an impairment rating because payment for Mr. Jones's medical care was not handled through Workers Compensation.  Had I been asked to assign a rating, I would have assigned a whole body impairment rating of not less than 20% based on his pathology, course of treatment, and response to treatment.  I do not believe Mr. Jones would have been able to tolerate employment requiring prolonged walking or standing at least two-thirds of an 8-hour work day during the period that he was under my care.  Further, I do not believe he would have been able to tolerate employment that did not allow him to change positions amongst sitting, standing, and moving around at will.

R. at 1010.

Based on Dr. Roybal's letter, Jones argued the ALJ's conclusion he was not disabled because he could perform a full range of light work before January 28,

8

2011, was contrary to the weight of the evidence.  The AC found no reason to review the ALJ's decision and denied Jones's request for review.  In reaching its decision, the AC stated it had considered Dr. Roybal's August 26, 2011, letter.  The district judge affirmed the AC's decision.

## II.    DISCUSSION

Based on Dr. Roybal's August 26, 2011, letter, Jones argues on appeal the AC improperly denied review of the ALJ's determination he was entitled to disability insurance benefits beginning January 28, 2011, rather than from his requested beginning date of March 31, 2009.  Jones contends the AC merely acknowledged he had submitted new evidence but failed to determine whether his treating physician's letter was material and entitled to more weight than the opinions of contrary, non-examining physicians.

We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (citation and internal quotation marks omitted).  "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."  *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (citations and internal quotation marks omitted).

9

"[C]redibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence." *Id.* (citations and internal quotation marks omitted).

"Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford*, 363 F.3d at 1158-59 (citation and internal quotation marks omitted). Even in light of new evidence, the AC may deny review if the record shows no error in the ALJ's decision. *See Mitchell*, 771 F.3d at 784-85 (affirming where the AC accepted the claimant's new evidence "but denied review because the additional evidence failed to establish error in the ALJ's decision"). Moreover, the AC is not required to explain its reasons for denying a request for review. *Id.*

In evaluating a claim for disability benefits, an ALJ uses a five-step process to analyze the following issues: whether the individual (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) based on his age, education, and work experience, can perform other work of the sort found in the national economy. *Phillips v. Banhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). At the fourth step, the ALJ assesses the claimant's RFC. *Id.* at 1238. "[T]he regulations define RFC as that which the individual is still able to do

10

despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R.
§ 404.1545(a)).  The ALJ makes the RFC determination based on all relevant
medical and other evidence presented.  *Id.*  In relevant part, the RFC determination
is used to decide whether the claimant "can adjust to other work under the fifth
step." *Id.*

"It is well-established that the testimony of a treating physician must be
given substantial or considerable weight unless good cause is shown to the
contrary." *Crawford*, 363 F.3d at 1159 (citation and internal quotation marks
omitted).  Nevertheless, "[a] treating physician's report may be discounted when it
is not accompanied by objective medical evidence or is wholly conclusory." *Id.*
(citations and internal quotation marks omitted).  Federal regulations define
"sedentary work" as work involving "lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files, ledgers, and small tools."
20 C.F.R. § 404.1567(a).  The regulations further explain, "[a]lthough a sedentary
job is defined as one which involves sitting, a certain amount of walking and
standing is often necessary in carrying out job duties. Jobs are sedentary if walking
and standing are required occasionally and other sedentary criteria are met." *Id.*
"Light work" is defined as work involving "lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.*
§ 404.1567(b).  A job in the light-work category may require "a good deal of

11

walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." *Id.*

"If new and material evidence is submitted" to the AC, then it "shall consider the additional evidence only where [the evidence] relates to the period on or before the date of the" ALJ's decision. 20 C.F.R. § 404.970(b). The AC "will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.* "[A] reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir. 2007).

Jones's arguments on appeal pertain only to the ALJ's decision at step five of the analysis of his claim for disability benefits: whether Jones could perform other work of the sort found in the national economy based on his age, education, work experience, and RFC. *See Phillips*, 357 F.3d at 1237-39. Jones does not appear to dispute the ALJ's initial RFC assessment. Instead, his argument on appeal concerns only the potential effect of Dr. Roybal's August 26, 2011, letter on the ALJ's RFC assessment.

Dr. Roybal's August 26, 2011, letter is not inconsistent with his clinical notes.  In his letter, Dr. Roybal opined that, during the period that he treated Jones, Jones could not have walked or stood for at least two-thirds of an eight-hour day or tolerated employment where he would not have been allowed to change positions from sitting, standing, and moving around at will.  That opinion does not conflict with his earlier treatment notes that Jones was walking on his own significantly, had no deficit in motion with flexion and extension, could lift up to 30 pounds, and could transition back to light duty.  Dr. Roybal's clinical notes do not express an opinion about what portion of an eight-hour work day Jones could sit, stand, or walk, or whether he could tolerate a job that required him to remain in a single position without the ability to sit, stand, or move around at will.

Jones's interpretation that Dr. Roybal's letter expressed an opinion that Jones could not perform light work is inconsistent with Dr. Roybal's October 16, 2009, treatment notes, wherein Dr. Roybal stated Jones could transition to light duty.  To the extent Dr. Roybal's August 26, 2011, letter expressed an opinion Jones could not have transitioned to light duty at any time during the relevant period, March 31, 2009, until January 28, 2011, the letter contradicts Dr. Roybal's October 16, 2009, treatment notes, stating Jones could begin transitioning to light duty.  Accordingly, the ALJ would have been entitled to disregard Dr. Roybal's letter, because the letter was unaccompanied by objective medical evidence and

13

contradicted by other record evidence by Dr. Roybal. *See Crawford*, 363 F.3d at 1159.

Significantly, Dr. Roybal's August 26, 2011, letter does not undermine the ALJ's determination of Jones's RFC for the period prior to January 28, 2011, before Jones turned 50; thus, it did not render the denial of benefits erroneous. *See Ingram*, 496 F.3d at 1262. The ALJ determined, prior to January 28, 2011, Jones could perform the full range of "sedentary work" and "light work" with some limitations as those terms are defined in 20 C.F.R. § 1567(a) and (b). In reaching that conclusion the ALJ relied upon Dr. Roybal's treatment notes, the opinion of the state agency medical consultants, and Jones's own testimony that he felt relief temporarily after undergoing surgery. Because neither of those categories of work necessarily involves sitting, standing, or walking more than two-thirds of an eight-hour day or remaining in a single position for an extended period, Dr. Roybal's August 26, 2011, letter does not cast doubt on the ALJ's determination. *See* 20 C.F.R. § 404.1567(a), (b); *Ingram*, 496 F.3d at 1262. In addition, Dr. Roybal's letter provides no basis to doubt the ALJ's credibility determination that Jones's subjective allegations about his symptoms were not credible prior to January 28, 2011, to the extent they were inconsistent with the RFC assessment. *See Mitchell*, 771 F.3d at 782.

14

The ALJ identified three specific jobs for which Jones was otherwise qualified and potentially could have performed prior to January 28, 2011, based on the VE's testimony: (1) ticket taker, (2) office helper, and (3) assembler.  The VE testified that the jobs of ticket taker and office helper included the ability to sit or stand at will.  Therefore, those two jobs, did not require that a worker walk, stand, or sit more than two-thirds of an eight-hour day or prevent him from changing positions amongst sitting, standing, and moving around at will.  Consequently, Dr. Roybal's August 26, 2011, letter does not suggest Jones could not have performed either of those two jobs prior to January 28, 2011; therefore, it does not render the denial of benefits prior to that date erroneous.  *See Ingram*, 496 F.3d at 1262.

Jones's argument the AC erred in failing to explain adequately its decision denying review is unavailing.  Our case law makes clear that the AC did not need to explain its reasons for denying a request for review when the claimant puts forth new evidence.  *See Mitchell*, 771 F.3d at 784-85.

On this record, Jones has failed to show his new evidence, Dr. Roybal's August 26, 2011, letter, rendered his denial of benefits prior to January 28, 2011, erroneous.  Therefore, the AC did not deny review improperly.  We affirm the AC's denial of review of the ALJ's determination that Jones was entitled to disability insurance benefits as of January 28, 2011, rather than March 31, 2009.

**AFFIRMED.**

15