[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14147
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-01191-ACA

TERESA JEAN HAND,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 17, 2019)

Before TJOFLAT, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Teresa Hand appeals the district court's decision affirming the Commissioner of Social Security's denial of her application for disability insurance benefits. On appeal, Hand makes three arguments: (1) the Administrative Law Judge ("ALJ") erred when assigning weight to the opinions of three medical experts and erroneously substituted her own opinion for that of the medical experts; (2) substantial evidence did not support the ALJ's decision because the ALJ relied on testimony from a vocational expert that was not based on all of Hand's limitations and impairments; and (3) the Appeals Council erroneously refused to consider new evidence that was material and chronologically relevant. She also urges us to adopt a new standard for evaluating consulting physicians' opinions, pointing us to the Seventh Circuit's decision in *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995). After careful review, we affirm.

## I.

Hand alleges disability as of February 9, 2013, based on a combination of mental and physical impairments, including carpal tunnel syndrome in both wrists, arthritis, bipolar disorder, depression, and asthma. Hand was 49 at the alleged onset date and 51 by the time of the hearing before the ALJ in March 2016. She has past work experience as a bookkeeper, customer service representative, and inspector, among other jobs.

2

In support of her disability claim, Hand submitted her medical records to the ALJ and testified at the disability hearing before the ALJ.  She also attended, at the behest of the agency, physical and mental consultative examinations by Dr. Anand Iyer and Dr. Samuel Fleming III, respectively, who prepared reports of their findings and opinions.  Another physician, Dr. Robert Estock, a state agency psychiatrist, reviewed these reports and Hand's medical records and offered his opinions as to Hand's mental residual functional capacity ("RFC").  Finally, the ALJ heard testimony from a vocational expert.

Dr. Iyer examined Hand on May 24, 2014.  Dr. Iyer's physical exam found decreased grip strength (3/5) bilaterally, with no muscle atrophy, and moderate restrictions in dexterity.  Hand had difficulty making a fist, opposing the digits of both hands, holding a pen, buttoning her jeans, and lifting a paper off the table with both hands.  Her left shoulder and both wrists had limited range of motion and some tenderness, but she had full range of motion elsewhere.  Based on the examination, Dr. Iyer opined that Hand may have "some impairment of functions" involving reaching overhead, handling, opening jars, tying shoes, buttoning shirts, writing, typing, holding, lifting, and carrying.

Dr. Fleming examined Hand on May 28, 2014.  At the exam, Hand reported a history of depression and anxiety starting in 2008, including manic and depressed episodes and past suicidal and homicidal ideations.  She reported two manic episodes

3

per month with depression most of the time.  Based on the mental exam and a review of Hand's medical records and her work history, Dr. Fleming opined that Hand would have difficulty managing financial benefits, particularly due to her manic episodes.  Further, according to Dr. Fleming, "[s]he does not seem capable of functioning independently due to her bipolar symptoms," [s]he would have difficulty remembering instructions but does seem capable of understanding and carrying them out with supervision," and "[s]he would have some difficulty responding appropriately to supervisors, coworkers and work pressures in the work setting given her work history."  Dr. Fleming assigned Hand a Global Assessment of Functioning ("GAF") score of 55.

Dr. Estock reviewed the record and prepared a mental RFC assessment on June 26, 2014.  Dr. Estock opined that Hand had moderate limitations in her ability to do the following: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting.  Dr. Estock further commented that Hand may miss one to two days a month of work due to psychiatric signs and

4

symptoms and that her interactions in the workplace should be casual and supportive.

On June 20, 2016, the ALJ issued a decision denying Hand's disability application. The ALJ found that Hand had the severe impairments of carpal tunnel syndrome, osteoarthritis, affective mood disorder, anxiety disorder, asthma, degenerative disc disease, and myofascial pain disorder, but she did not meet or medically equal any listed impairment in 20 C.F.R. Part 404. The ALJ then determined that Hand had the RFC to perform light work with certain physical and mental limitations.

In explaining the RFC finding, the ALJ discussed the medical records and the examinations and opinions of Dr. Iyer, Dr. Fleming, and Dr. Estock. The ALJ gave "some, but not great, weight" to Dr. Estock's mental RFC assessment because he included some limitations that were not phrased in vocationally relevant terms, "little to no weight" to his unexplained opinion that Hand would miss one to two days of work per month, and "great weight" to his opinion concerning the effect of Hand's impairments on her ability to perform the mental requirements of work. The ALJ gave "partial weight" to Dr. Iyer's opinions because "the claimant's deficits during this exam are inconsistent with the other evidence of record which shows repeatedly normal or only mildly reduced strength, sensation and range of motion." Finally, the ALJ gave Dr. Fleming's opinions "great, but not full weight," finding his

5

assessment broadly consistent with the ALJ's findings and the record evidence. Although the limitations placed by the ALJ precluded Hand from performing past relevant work, the ALJ, relying on the testimony of the vocational expert, determined that Hand could transition to other work in the national economy.

Hand sought review with the Appeals Council, submitting additional medical records from both before and after the date of the ALJ's decision. The Appeals Council concluded that the medical records that pre-dated the ALJ's decision "d[id] not show a reasonable probability that [they] would change the outcome of the decision." As to the medical records that post-dated the ALJ's decision, the Appeals Council stated that the evidence did not affect the ALJ's decision because it "d[id] not relate to the period at issue" and "d[id] not affect the decision about whether [Hand was] disabled beginning on or before June 20, 2016."

Hand then sought judicial review, but the district court affirmed the denial of benefits. She now appeals. *See* 42 U.S.C. § 405(g).

## II.

"In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). We must affirm a decision that is supported by substantial evidence even if the evidence preponderates against the agency's findings. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). And we may not reweigh the evidence, decide the facts anew, or substitute our judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178.

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). Regulations outline a five-step, sequential evaluation process ALJs must use to determine whether a claimant is disabled: (1) whether she is currently engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether she can perform her past relevant work despite her impairments; and (5) whether she can perform other work found in the national economy. *Winschel*, 631 F.3d at 1178; *see* 20 C.F.R. § 404.1520(a)(4)(i)–(v). Steps four and five depend on a claimant's residual functional capacity, or RFC, which is an assessment of a claimant's ability to do work despite her impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440.

**A.**

7

Hand first argues that the ALJ's treatment of the medical opinions at the fourth and fifth steps constitutes reversible error.  Medical opinions are statements from physicians and other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments and what the claimant can still do despite the impairments.  *Winschel*, 631 F.3d at 1178–79.

The ALJ must consider medical opinions together with relevant evidence in the record.  20 C.F.R. § 404.1527(b).  In assessing the weight due to be afforded to medical opinions, the ALJ should consider the following factors:  the examining and treatment relationship between the claimant and doctor; the supportability and consistency of the opinion with the record as a whole; the specialization of the doctor; and other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c).  The ALJ applies the same standards whether the medical opinion is from a treating physician, a consultative examiner hired by the agency, or a non-examining, reviewing physician.  *See id.* §§ 404.1527(c), 404.1513a(b)(1)–(2).  As a general matter, the opinions of treating specialists are entitled to the most weight, while the opinions of non-examining, reviewing physicians are entitled to the least weight.  *See id.* § 404.1527(c)(1)–(2).  "Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).  But the ALJ generally may not substitute his or her own opinion on medical issues for that of the medical experts.  *See Graham v. Bowen*,

8

786 F.2d 1113, 1115 (11th Cir. 1986); *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).

To facilitate meaningful review, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore." *Winschel*, 631 F.3d at 1179. In other words, the ALJ must set forth with "at least some measure of clarity the grounds" for the decision, and "we will decline to affirm simply because some rationale might have supported the ALJ's conclusion." *Id.* (quotation marks omitted).

Here, the ALJ did not err in declining to give full weight to the medical opinions. The ALJ explained with particularity the weight she gave to each opinion, as required by this Court's precedent, and substantial evidence supports the weight she gave them.

First, the ALJ adequately explained that she gave Dr. Iyer's opinions only partial weight because Dr. Iyer's examination findings were inconsistent with the rest of the record evidence. The regulations permit an ALJ to assign weight to a medical opinion based on how "consistent [the] medical opinion is with the record as a whole," 20 C.F.R. § 404.1527(c)(4), so the ALJ clearly expressed a legitimate reason for discounting Dr. Iyer's opinion. And that reason is supported by substantial evidence. As the ALJ noted, Dr. Iyer's more severe examination findings, particularly regarding Hand's dexterity and grip strength, were inconsistent

9

with the other treatment records in the record, which showed normal or mildly reduced strength, sensation, and range of motion in the upper extremities. The ALJ permissibly concluded from this evidence that Dr. Iyer's assessment was entitled to less weight because it was not consistent with the record as a whole, and we may not reweigh the evidence and decide the facts anew. *See Winschel*, 631 F.3d at 1178.

Second, the ALJ explained with particularity why she gave Dr. Fleming's opinions great, but not full, weight. Based on Dr. Fleming's opinion that the claimant would have difficulty remembering instructions but could understand and carry them out with supervision, the ALJ limited Hand to understanding, remembering, and carrying out only simply or detailed tasks, but not complex ones. The ALJ also considered Dr. Fleming's opinion regarding Hand's ability to socialize and deal with work stress by requiring few workplace changes and limiting her social interaction in the workplace. The ALJ found that these restrictions were consistent with the GAF score of 55, which indicated moderate symptoms or limitations, with the results of Dr. Fleming's examination, which showing normal recent memory but some problems with delayed recall, with Hand's history of treatment with the CED Mental Health Center, which showed stability of treatment, and with Hand's "normal presentation at the hearing." The ALJ thus adequately explained why she gave great, but not full, weight to Dr. Fleming's opinions.

10

Hand criticizes the ALJ for imposing a condition—that she can "frequently interact with coworkers and supervisors"—at odds with Dr. Fleming's assessment. But Dr. Fleming's opinion was that Hand would have "some difficulty" dealing with workplace interactions and work pressures, and the ALJ incorporated that vague assessment in the RFC by limiting Hand to non-complex tasks, infrequent and gradual workplace changes, and limited interaction with the public. We find that the ALJ's reasoning is supported by substantial evidence in the record.

Third, the ALJ explained with particularity why she gave the opinions of Dr. Estock, a non-examining state agency consultant, various weights. The ALJ explained that she gave some, but not great weight to Dr. Estock's mental RFC assessment, as he included multiple recommendations that were not phrased in vocationally relevant terms. For example, Dr. Estock opined that Hand would benefit from a flexible schedule, supportive feedback, casual supervision, and non-confrontational criticism, but, according to the ALJ, these were not factors that could "realistically be covered by the ALJ or vocational expert in the context of a disability hearing." We see no error in this regard. As to Dr. Estock's opinion that Hand would likely miss one to two days of work per month for psychiatric purposes, we agree with the ALJ that Dr. Estock did not provide any supporting explanation for this prediction. *See* 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their

11

medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions."). The ALJ, accordingly, did not err by discounting this unexplained opinion.

Further, Hand does not appear to challenge the ALJ's decision to give great weight to Dr. Estock's opinion concerning Hand's ability to perform the mental requirements of work. While Hand accuses the ALJ of "cherry picking" Dr. Estock's evaluation, nothing in the relevant regulations requires ALJs to apply an all-or-nothing approach when assessing a medical source's opinions. In fact, the opposite is true. The regulations define a "medical opinion" simply as a statement from a medical source that reflects a judgment about the claimant's impairments. 20 C.F.R. § 404.1527(a)(1). A medical source can provide multiple statements regarding a claimant's impairments, and the weight to be afforded each of a medical source's opinions may differ based on the factors set forth in § 404.1527(c). *See id.* § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive[]" according to the standards set forth in § 404.1527(c)). The ALJ therefore did not err in assigning various weights to Dr. Estock's opinions. And the ALJ's reasoning was otherwise adequately explained and supported by substantial evidence.

Finally, Hand maintains that this Court should adopt a "stricter standard" specific to review of medical opinions by experts chosen by the Commissioner,

12

pointing us to the Seventh Circuit's decision in *Wilder*.  Even if we were at liberty to adopt a new standard, Hand does not explain why current standards, applicable to all medical opinions, are insufficient to review whether an ALJ's decision is consistent with relevant legal standards and supported by substantial evidence. Binding precedent already requires ALJs to "state with particularity the weight given to different medical opinions and the reasons therefore," *Winschel*, 631 F.3d at 1179, and it generally prevents ALJs from substituting their own opinions for the judgments of medical professionals, *see Freeman*, 681 F.2d at 732 ("[T]he ALJ improperly substituted his judgment of the claimant's condition for that of the medical and vocational experts.").  So it's not clear to us that *Wilder* adds much to our existing precedent, nor is it apposite because the facts of that case differ substantially from the present case.  64 F.3d at 337 (determining that, where the consulting physician's opinion was the only medical evidence regarding the applicant's mental health impairments, the ALJ's rejection of that opinion was based on "rank conjecture").

For all of these reasons, the ALJ did not err in its treatment of the medical opinions in the record.

**B.**

Hand next argues that the ALJ's decision was not supported by substantial evidence because the ALJ relied on testimony from the vocational expert that "was

not based on a correct or full statement of claimant's limitations and impairments." Hand suggests that the vocational expert's testimony omitted a manipulative restriction limiting her to only occasional reaching, handling, and fingering.

While the Commissioner may prove the existence of jobs that the claimant can perform through vocational expert testimony, for vocational expert testimony to constitute substantial evidence, the ALJ must present a hypothetical question that includes "all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The hypothetical posed by the ALJ does not need to include every symptom of the claimant, but only "the claimant's impairments." *Ingram*, 496 F.3d at 1270. As a result, the ALJ is not required to include limitations that she properly rejected as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

The question therefore is whether substantial evidence supports the ALJ's decision not to limit Hand's RFC to *occasional*—as opposed to *frequent*—reaching, handling, and fingering. This determination was critical to the ALJ's unfavorable decision. According to the vocational expert, there were no jobs in the national economy for a person like Hand who could perform light work with only occasional reaching, handling, and fingering. But, leaving all else equal, there were available jobs for a person like Hand who could frequently reach, handle, and finger. So, if substantial evidence supports the ALJ's RFC finding, the ALJ properly included in

14

the hypothetical "all of the claimant's impairments" that she found were supported by the record. *See Crawford*, 363 F.3d at 1161; *Wilson*, 284 F.3d at 1227.

Here, substantial evidence supports the ALJ's RFC finding that Hand could perform light work with frequent reaching, handling, and fingering. The objective medical evidence supports the ALJ's findings that Hand's finger, wrist, and arm issues were not as extensive as alleged. For example, Hand's treatment records showed no weakness during many examinations, with normal wrist and hand range of motion, indicating that her allegations of grip weakness and hand pain were not fully supported by the evidence. In addition, two separate doctors indicated on treatment notes that Hand's reported symptoms were out of proportion to what they found in their medical examinations. Moreover, the results of Dr. Iyer's consultative examination showed a normal range of motion in Hand's neck and minimally reduced left shoulder range of motion. And Hand's MRIs were either normal or showed only minimal facet arthritis and disc desiccation. While, for example, Dr. Iyer's examination suggested that Hand could not perform frequent reaching, handling, and fingering, we must affirm the ALJ's decision because it is supported by substantial evidence in the record. *See Ingram*, 496 F.3d at 1260.

In sum, the ALJ properly relied on vocational expert testimony that was based on a full statement of Hand's limitations and impairments, as found by the ALJ. The ALJ was not required to include, in the hypothetical, findings that she properly

15

rejected as unsupported by the evidence. *See Crawford*, 363 F.3d at 1161. Accordingly, the ALJ's decision denying Hand disability insurance benefits was supported by substantial evidence.

## III.

Finally, Hand argues that the Appeals Council erroneously refused to consider new evidence that was material and chronologically relevant. We review *de novo* the Appeals Council's refusal to consider new evidence. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

With few exceptions, the claimant may present new evidence at each stage of the administrative process, including before the Appeals Council. *Id.* at 1320. If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider whether the evidence is new, whether it relates to the period on or before the ALJ's hearing decision, and whether there is a reasonable probability that it would change the outcome of the decision. 20 C.F.R. § 404.970(a)(5). If the evidence is new, chronologically relevant, and material, the Appeals Council must consider it. *Ingram*, 496 F.3d at 1261. The Appeals Council's erroneous refusal to consider evidence constitutes legal error and warrants remand. *Washington*, 806 F.3d at 1321.

Hand contends that the Appeals Council erred in failing to consider new treatment records solely because they were dated after the date of the ALJ's

16

decision.[1]    Noting that, under our decision in *Washington*, evidence may be chronologically relevant even if it is created after the ALJ's decision, *see Washington*, 806 F.3d at 1321 (holding that a psychiatrist opinion's prepared seven months after the ALJ's decision was chronologically relevant because it was based on the claimant's treatment records pre-dating the ALJ's decision), Hand maintains that the Appeals Council committed reversible legal error by failing to determine whether the new evidence was chronologically relevant.

Here, the Appeals Council did not legally err.  The Appeals Council stated that the new medical records "d[id] not relate to the period at issue" and "d[id] not affect the decision about whether [Hand was] disabled beginning on or before June 20, 2016."  In *Hargress v. Social Security Administration, Commissioner*, we found that nearly identical statements by the Appeals Council showed that "the Appeals Council declined to consider these new medical records because they were not chronologically relevant."  883 F.3d 1302, 1309 (11th Cir. 2018).  We reach the same conclusion here.  And "[t]he Appeals Council was not required to give a more detailed explanation or to address each piece of new evidence individually."  *Id.*

---

[1] Hand does not challenge the Appeals Council's conclusion that the new treatment records that pre-dated the ALJ's decision were not material because there was no reasonable probability that they would change the outcome of the ALJ's decision.  We therefore deem this matter abandoned and omit any further discussion of the records that pre-dated the ALJ's decision. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-81 (11th Cir. 2014) (issues not prominently raised on appeal are abandoned).

17

Further, we agree with the Appeals Council that the new medical records were not chronologically relevant.  The new evidence consisted of treatment records that post-dated the ALJ's decision.  Unlike the new evidence in *Washington*, Hand identifies "nothing in these new medical records [which] indicates the doctors considered [Hand's] past medical records or that the information in them relates to the period at issue."  *Id.* at 1309–10.  Accordingly, the Appeals Council properly refused to consider this new evidence.

## IV.

The district court's decision affirming the Commissioner's denial of disability insurance benefits is **AFFIRMED.**