[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11136

Non-Argument Calendar

_____

EDWARD JARMON,

Plaintiff-Appellant,

*versus*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:20-cv-01072-CLM

_____

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Edward Jarmon appeals the district court's order affirming the Social Security Administration Commissioner's denial of his application for disability benefits. After careful review, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In October 2017, Jarmon applied for disability and disability insurance benefits. He alleged an onset date of January 1, 2013 for numerous physical and mental impairments. When Jarmon's application was denied based upon a "not disabled" finding, he requested and received a hearing before an administrative law judge (ALJ).

After an August 2019 hearing, the ALJ issued a decision in September 2019. Applying the five-step sequential evaluation process outlined in 20 C.F.R. sections 404.1520 and 416.920, the ALJ made the following findings. First, Jarmon was insured through December 31, 2016 and had not engaged in substantial gainful activity since January 1, 2013. Second, Jarmon had the severe impairments of bilateral carpal tunnel syndrome, status post bilateral carpal tunnel releases; degenerative changes of the right hand/wrist; left knee degenerative joint disease, status post multiple arthroscopic surgeries; left and right foot osteoarthritis; and left tarsal

tunnel syndrome.[1]  Third, none of Jarmon's impairments (individually or combined) met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Instead, Jarmon had the residual functional capacity to perform "light" work involving occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; unlimited stooping; frequent balancing, kneeling, crouching, and crawling; frequent bilateral handling, fingering, and feeling, but with no repetitive or constant usage; no concentrated exposure to extreme temperatures, loud, noisy work environments, wetness, or humidity; and no hazards (such as open flames, unprotected heights, or dangerous moving machinery).  Fourth, Jarmon could no longer perform his past relevant work as a computer numerical control machinist.  And fifth, Jarmon could perform other work existing in significant numbers in the national economy.

To reach this last finding, the ALJ posed two hypotheticals to a vocational expert during Jarmon's hearing.  In both hypotheticals, the ALJ instructed the vocational expert to assume a hypothetical person of Jarmon's age, education, and work experience. In one hypothetical, the expert was asked to assume limitations matching the ALJ's eventual residual functional capacity finding, including the ability to perform frequent bilateral handling,

---

[1] The ALJ concluded that Jarmon's other physical impairments—as well as his mental impairments—were non-severe as of his date last insured, "failed to meet the [twelve-month] durational requirement," or were unsupported by the record evidence.

fingering, and feeling.  In the other hypothetical, the vocational expert was asked to assume the more limited capability to perform only occasional bilateral handling, fingering, and feeling.[2]  In the former case, the vocational expert testified that the hypothetical person could work as a furniture rental clerk or cashier II.  In the latter (more limited) case, she testified that the hypothetical person could still work as a furniture rental clerk or, alternatively, as a counter clerk.  All three jobs, according to the vocational expert, existed in numbers upwards of 45,000 nationally.

Based on these findings, the ALJ concluded that Jarmon was not disabled between his alleged onset date and his date last insured and so denied Jarmon's application.

Jarmon asked the Appeals Council to review the ALJ's decision and submitted additional medical records, some of which post-dated that decision.  Among the post-dated records Jarmon submitted were physical capacity evaluations completed by Drs. Luis Pineda and Rommel Go in November 2019 and February 2020.  Each doctor expressed opinions about limitations on Jarmon's ability to remain seated or standing for long periods of time, as well as

---

[2] The ALJ also posed a third hypothetical, asking the vocational expert to assume that—in addition to the limitations posed in the first two hypotheticals—the person would "need frequent unscheduled work absences."  The vocational expert testified that "[t]here would be no work in the national economy that a person could maintain with that particular limitation."  The ALJ's eventual residual functional capacity finding did not, however, include an unscheduled-absences limitation.

how frequently he'd need to take unscheduled work absences. The doctors listed the medical conditions causing Jarmon's limitations and opined that "these limitations exist[ed] back to 1/1/13" (Jarmon's alleged disability onset date).

The Appeals Council denied Jarmon's request for review. In doing so, the Appeals Council declined to incorporate as exhibits Jarmon's post-dated medical records—including the physical capacity evaluations completed by Drs. Pineda and Go—because the evidence "d[id] not relate to the period at issue" and so "did not affect the decision about whether [Jarmon] w[as] disabled" on or before his date last insured. The Appeals Council also determined that there was no reasonable probability that "the remaining additional records (which were dated before Jarmon's date last insured) . . . would change the outcome of the [Commissioner's] decision."

Jarmon challenged his denial of benefits in the district court. He made three arguments: (1) the ALJ "failed to properly determine [Jarmon's] date of disability pursuant to Social Security Ruling 83-20," which says an ALJ "should" consult a medical expert when a claimant's disability onset date "must be inferred"; (2) the ALJ's decision was not supported by substantial evidence because the ALJ relied on vocational expert testimony responding to an incomplete hypothetical; and (3) the Appeals Council erred by refusing to incorporate as exhibits the physical capacity evaluations completed by Drs. Pineda and Go "because the records were dated after the date of the ALJ decision, without considering if the submissions were chronologically relevant."

The district court affirmed the ALJ's decision.  First, the district court pointed out that Social Security Ruling 18-01p—which applied to Jarmon's case, rather than Ruling 83-20—made medical-expert consultation for determining a claimant's disability onset date discretionary (and Ruling 83-20 applied only after a finding of disability anyways).  Second, the district court concluded that Jarmon abandoned any challenge to the ALJ's reliance on the vocational expert's testimony because Jarmon failed to explain how the ALJ's hypothetical questioning was deficient.  Third, the district court concluded that the Appeals Council didn't err in finding the physical capacity evaluations chronologically irrelevant because the doctors began treating Jarmon long after his date last insured and "nothing suggest[ed] that Dr. Go or Dr. Pineda relied on Jarmon's earlier medical records to find that he had limitations existing back to January 2013."

This is Jarmon's timely appeal.

## STANDARD OF REVIEW

"Our review is the same as that of the district court, meaning we neither defer to nor consider any errors in the district court's opinion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (cleaned up).

Where, as here, the Appeals Council denies review of an ALJ's unfavorable decision, we review the ALJ's ruling as the Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  Our review is limited to whether substantial evidence supports the ALJ's factual findings and "whether the correct

22-11136                 Opinion of the Court                 7

legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

We review de novo the Appeals Council's refusal to consider new, material, and chronologically relevant evidence. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320–21 (11th Cir. 2015). Evidence is "chronologically relevant" when it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(a)(5).

## DISCUSSION

Jarmon raises three challenges on appeal: (1) Social Security Ruling 83-20 required the ALJ to consult a medical expert to determine Jarmon's disability onset date; (2) the ALJ's decision was not supported by substantial evidence because it relied on vocational expert testimony based on an incomplete hypothetical; and (3) the Appeals Council erred by rejecting the physical capacity evaluations completed by Drs. Pineda and Go (which postdated the ALJ's decision) as chronologically irrelevant.[3]

---

[3] In places, Jarmon also says (as he argued in the district court) that the Appeals Council rejected the evaluations "without considering if the submissions were chronologically relevant." The record patently refutes any claim that the Appeals Council failed to consider chronological relevance. The Appeals Council specifically stated that much of Jarmon's "additional evidence does not relate to the period at issue"—a conclusion plainly referring to the evidence's chronological relevance, *see* 20 C.F.R. § 404.970(a)(5)—and it "was not required to give a more detailed explanation or to address each piece of new evidence

Jarmon has abandoned two of these three issues. His first issue depends on Social Security Ruling 83-20—an "agency ruling[] . . . binding on all components of the [Social Security] Administration," *Sullivan v. Zebley*, 493 U.S. 521, 539 n.9 (1990) (cleaned up)—but Jarmon ignores that Ruling 83-20 was rescinded and replaced by Ruling 18-01p for claims newly filed or pending on or after October 2, 2018, 83 Fed. Reg. 49613, 49613, 49616 (2018). Jarmon's claim was pending on October 2, 2018—he filed his claim in October 2017, and the ALJ didn't issue a decision until September 2019. So Social Security Rule 18-01p, not Ruling 83-20, applied to Jarmon's case. And because he only acknowledges Ruling 18-01p in passing, he has abandoned any argument of error under the new ruling. *See Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) (explaining that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed"); *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014) (appellants abandoned argument by failing to "advanc[e] any arguments or cit[e] any authorities to establish" error).[4]

---

individually," *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (citation omitted).

[4] The same is true of the treating-physician rule argument the district court found "[b]uried within" Jarmon's Social Security Ruling 83-20 argument. That rule was abrogated for claims, like Jarmon's, filed on or after March 17, 2017. *See* 20 C.F.R. § 404.1520c(b)(2); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022). Jarmon neither cites nor acknowledges section 404.1520c

Jarmon has also abandoned his argument that the Appeals Council erred in rejecting Dr. Pineda's and Dr. Go's physical capacity evaluations as chronologically irrelevant. In *Harner v. Social Security Administration, Commissioner*, 38 F.4th 892 (11th Cir. 2022), we concluded that the appellant had abandoned several issues because the argument portion of her brief—written by the same counsel who appeared for Jarmon in this case—"consist[ed] only of block quotations from and cursory mentions of various decisions of this and other courts" that "provid[ed no] meaningful explanation as to how the decisions she cite[d] appl[ied] to her claim" of error. *Id.* at 899. The same is true here.

When we strip Jarmon's brief of its many block quotations, his argument with respect to chronological relevance boils down to this: (1) Dr. Pineda's treatment records were in the record before the ALJ, and those records supported Dr. Pineda's opinion that Jarmon's impairments dated back to January 2013; and (2) Dr. Go's treatment records were submitted to the Appeals Council. He doesn't explain why the physical capacity evaluations were chronologically relevant or pincite specific treatment records either demonstrating chronological relevance or supporting the disability onset date opinions expressed in the doctors' physical capacity evaluations. Instead, Jarmon cites only to a 135-page range as containing Dr. Pineda's treatment records and to docket entry 10 (which,

and so has forfeited any argument of error under the new regulation. *See Access Now*, 385 F.3d at 1330; *Sapuppo*, 739 F.3d at 681.

with its attachments, spans some 1,200 pages of the record on appeal) for Dr. Go's.

Jarmon clarifies his argument some in his reply brief. There, he argues for application of our holding in *Schink v. Commissioner of Social Security*, 935 F.3d 1245 (11th Cir. 2019), that "treating-physician opinions 'should not be considered in a vacuum, and instead, the doctors' earlier reports should be considered as the bases for their statements," *id.* at 1262 (quoting *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984)). But he still fails to pinpoint where in the record (not even within a 100-plus page range) we might find "earlier reports" supporting Dr. Pineda's and Dr. Go's opinions or their chronological relevance. Instead, all we get is a conclusory statement that "[w]here those treating doctors' treatment notes flesh out and are consistent with their conclusions, the posthearing opinion must be based on pre-hearing conditions, and treatment—and in the absence of proof to the contrary—*must* be chronologically relevant." Because Jarmon has failed to "meaningfully explain" how the cases (or broad record swaths) he cites apply to his claim of error, we find that he has abandoned the chronological relevance issue. *Harner*, 38 F.4th at 899.

That leaves Jarmon's substantial-evidence argument. Jarmon argues the ALJ's decision wasn't based on substantial evidence because "the hypotheticals [the ALJ] posed to the vocational expert did not accurately state Jarmon's pain level or residual functional capacity." Because the vocational expert's testimony "was not based on a correct or full statement of [Jarmon's] limitations and

impairments," he says the testimony couldn't have constituted substantial evidence.

"In a disability determination, once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1228–29 (11th Cir. 1999) (citation omitted), *superseded on other grounds by regulation as recognized in Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018). One way the Commissioner can make this showing is through the testimony of a vocational expert. *Id.* at 1229 (citation omitted).

"In order for a [vocational expert]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments," as well as her age, education level, and work experience. *Id.* (citing *McSwain v. Bowen*, 814 F.2d 617, 619–20 (11th Cir. 1987)); *Pendley v. Heckler*, 767 F.2d 1561, 1562–63 (11th Cir. 1985) (citation omitted). But a hypothetical need not incorporate "each and every symptom of the claimant," nor reflect medical conditions or limitations that the ALJ found "were either not supported by [the] medical records or were alleviated by medication." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007). Instead, the hypothetical simply needs to "provide the [vocational expert] with a complete picture of the claimant's [residual functional capacity]." *Samuels v. Acting*

*Comm'r of Soc. Sec.*, 959 F.3d 1042, 1047 (11th Cir. 2020) (citing *Ingram*, 496 F.3d at 1270).

The ALJ's hypothetical questions were proper here. The ALJ asked the vocational expert which jobs a hypothetical person of Jarmon's age, education, and work experience could perform if that person was limited to "light work with occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing; unlimited stooping; frequent kneeling, crouching, and crawling; frequent bilateral handling, fingering, and feeling, but with no repetitive or constant usage" and needed to "avoid concentrated exposure to extreme temperatures, loud, noisy work environments, wetness, and humidity" as well as "all hazards, such as open flames, unprotected heights, and dangerous moving machinery." These limitations precisely matched Jarmon's ultimate residual functional capacity—which Jarmon didn't challenge before the district court or here. The ALJ also asked the vocational expert which jobs the same hypothetical person could do if limited to only "occasional bilateral handling, fingering, and feeling, with no repetitive or constant usage"—a scenario more restrictive than the ALJ's eventual residual functional capacity finding. Because these hypotheticals "comprise[d] all of [Jarmon's] impairments"— with the second hypothetical assuming even less residual functional capacity than the first—they "provide[d] the [vocational expert] with a complete picture" of Jarmon's residual functional capacity. *See Jones*, 190 F.3d at 1229; *Samuels*, 959 F.3d at 1047. The vocational expert's testimony about jobs Jarmon could still

perform in the national economy thus constituted substantial evidence supporting the ALJ's no-disability finding.

The fact that the ALJ's hypotheticals didn't reflect any particular pain level also was not error. In analyzing Jarmon's medical records, the ALJ noted that Jarmon "ha[d] been treated for chronic pain." But Jarmon doesn't challenge the ALJ's finding that he "was consistently in no acute distress on examination[] and reported that he was improved with exercise and improved with medication." Because the ALJ found that Jarmon's chronic pain was "alleviated by medication," the ALJ was not required to factor those symptoms into the hypotheticals posed to the vocational expert. *See Ingram*, 496 F.3d at 1270.

Finally, Jarmon points out that, under the conditions assumed in the ALJ's third hypothetical—namely, that the hypothetical person "would need frequent unscheduled work absences"—the vocational expert testified that "there would be no work in the national economy that person could maintain." We find no merit to Jarmon's suggestion that this alternative hypothetical somehow rendered deficient the vocational expert's testimony in response to the ALJ's first two hypotheticals. *Cf. Chaney v. Califano*, 588 F.2d 958, 960 n.5 (5th Cir. 1979) ("The Hearing Examiner posed alternative findings of physical impairment, one of which exactly paralleled the Hearing Examiner's ultimate determination, and asked the expert what Chaney's work prospects would be under each hypothetical. Each hypothetical was based on testimony or evidence in the

record, and we conclude that there was no error in this form of questioning.").

**AFFIRMED.**